## Baker *against* M'Dowell.

B., seised in fee of a tract of land, subject to an outstanding title to one-half of all iron ore found on the premises, conveyed the same to H., in fee, "excepting and reserving to the said B., his heirs and assigns, the one-half of all iron ore found on the premises." *Held*, to be a reservation to the grantor himself of that half of the ore which was vested in him, and not a mere notice or reservation of the other half which was outstanding.

ERROR to the Common Pleas of *Huntingdon* county.

Samuel M'Dowell against Elias Baker and Roland Diller. This was an action of trover and conversion, to recover the price of the one-half of 291 tons of iron ore.

Andrew Henderson being seised of a tract of land, conveyed the same in fee to Thomas Blair, with the following reservation: "Excepting and reserving thereout to Andrew Henderson, his heirs and assigns, for ever, the one-half of all iron ore found, and to be found, in and upon the said premises; together with the right and privilege to enter in and upon the said premises, and every part thereof, to dig, raise, search for, and carry away with such teams as Andrew Henderson may choose; doing, nevertheless, as little damage, and creating as little inconvenience to Thomas Blair,

his  heirs  and  assigns,  as  possible,  in  executing  this  reserved right."

After the death of Thomas Blair, his heirs at law conveyed the same tract of land to Patrick Hamilton, "together with all and singular the rights, liberties, privileges, immunities, hereditaments, and appurtenances whatsoever to the same belonging, or in anywise appertaining, and the reversions, rents, issues, and profits thereof, and all the estate, right, title, and interest, either at law or in equity, of them, the said John Blair and Barbara his wife, Ruth Moore, Alexander Blair, and George Buchanan and Catharine his wife, of, in, to and out of the same; to have and to hold all and singular the hereby granted premises, with the appurtenances, unto the said Patrick Hamilton, his heirs and assigns, to his and their own proper use, benefit, and behoof, for ever; excepting and reserving thereout to the said John Blair and Barbara, his wife, Ruth Moore, Alexander Blair, and George Buchanan and Catharine his wife, their heirs and assigns for ever, the one-half of all iron ore found, or to be found, in or upon the premises; together with the right and privilege to enter in and upon the premises, and every part thereof, to dig, raise, and search for, and carry away the same with such teams as they may choose; doing, nevertheless, as little damage, and creating as little inconvenience as possible, to the said Patrick Hamilton, his heirs and assigns, in exercising this reserved right."

The defendants having the title of Andrew Henderson to one-half of the ore, entered upon the land and dug and carried away the 291 tons in controversy.  The plaintiff who claimed under Patrick Hamilton, sought to recover the price of one-half of the ore taken away by the defendants.  The question arose upon the construction of the deed of the heirs of Thomas Blair to Patrick Hamilton.  The plaintiff contended that the reservation contained in it had relation to that half of the title to the iron ore which was reserved to and vested in Andrew Henderson, and was to be construed as a notice to the grantees of that outstanding title.  The defendants, who claimed title under Andrew Henderson, contended that Patrick Hamilton took the land subject to the reservation of the title to that half of the iron ore which was vested in the grantors, and therefore the plaintiff had no right to any part of the ore.

The court below was of opinion with the plaintiff, that it was not the intention of the heirs of Thomas Blair to reserve to themselves the right to one-half of the ore, but to reserve that half which was outstanding in Andrew Henderson, and vest the land and the other half in the grantees.  The same question was argued here by

*Miles* and *Blanchard*, for plaintiffs in error.
*Bell*, for defendants in error.

The opinion of the Court was delivered by

GIBSON, C. J.—The deed which gives rise to the question is a conveyance of the land, together with " the rights, liberties, privileges, immunities, hereditaments, and appurtenances;" and the " reversions, rents, issues, and profits, thereof; and all the estate, right, title and interest" of the grantors: whence the Judge who tried the cause seems to have thought that it was necessary for them, in order to save themselves from being implicated in a breach of their warranty, to restrain the general terms of the grant by repeating, in the *habendum*, the reservation which Henderson had made in his deed to Blair, their ancestor. Now, in the first place, there is nothing in this deed of Blair's heirs, which would purport, without such a repetition, to pass the ore further than they had power to pass it. Henderson's reservation of a moiety of it, operated by excepting it from the rest of the thing granted; and his part of it, being parcel of the soil, was not one of the things particularly enumerated as subjects of the grant. By their conveyance of the land, the heirs of Blair did not profess to pass more than their estate in it; and the usual flourish about those incorporeal rights which are incidental to the ownership, did not purport to pass the ore which was a different corpus from anything mentioned in it. Again: had the grantors pretended to pass the land discharged of Henderson's reservation, they would not have broken their warranty, which, being a special one, extended no further than to encumbrances created or suffered by themselves. But Henderson's reservation, operating as it did by way of exception, was not an encumbrance of any sort; and if it were, it was not created by the grantors. Lying within the knowledge of the grantee when he purchased, it would not even be a defence, on the ground of failure of consideration, to an action for the purchase money. The reservation of Blair's heirs, therefore, was unnecessary to secure anything but their own moiety of the ore—certainly not to apprise their grantee of the existence of Henderson's reservation; of which, lying as it did in the channel of the title he was purchasing, he was bound to take notice. It is possible they may have been so far mistaken in their judgment of the law, as to think otherwise; but, in that case, why declare the reservation to be, not for Henderson, but for themselves. If the purpose was to show conclusively that his part of the ore was not pretended to be conveyed, the obvious way to effect it was to convey the land expressly subject to his interest in it. A clause to that effect would have evinced an intent not to be mistaken; but that this reservation was introduced to except what did not belong to the grantors, is altogether improbable. Why reserve what they had not power to pass? Were we at liberty to weigh probabilities, we would have more reason to think they actually intended to reserve the moiety of the ore for their own use, than that they intended to guard themselves from future difficulty in

[Baker v. M'Dowell.]

regard to the prior reservation. But though a deed is to be interpreted so as to accord, as nearly as may be, with the apparent design of the parties, we are not to be governed by conjecture in regard to the actual state of it. We are furnished with guides to greater certainty of result, and with at least an equal chance to reach the actual meaning. The law presumes that every man intends the legal consequences of his words; and hence it is that no allowance is made in the construction of deeds for unskilfulness in the use of language. Even the words of a will, in respect to which the rigour of the principle is somewhat abated, are understood in their legal sense, where an intent to use them in a different one is not apparent from the context. We are bound to assume, then, that these grantors knew the legal effect of their words, as well as the rules by which they were to be construed; one of which is, every part of a deed must be allowed to operate where it may, and every word to take effect. Now by referring this reservation to Henderson's moiety, we would deprive it of its power, for his reservation had left nothing remaining but the other moiety to be the subject of future exception; but by referring it to that other moiety, we put all the parts of the instrument in harmonious action. Its legal effect, therefore, is to except from the grant that which was susceptible of exception—the part of the ore which was the property of the grantors.

Judgment reversed.