# CHARLESTON.

HARRIS *v.* COBB *et al.*

Decided March 23, 1901.

1. DEED—*Reservation—Construction.*

> M. and husband conveyed by deed to H. 52 acres of land in fee, which deed contained this provision: "The parties of the first part reserve unto themselves, and do not convey by this deed, the equal one-half part of the usual royalty of one-eighth of all the petroleum or oil in and underlying the tract of land hereby conveyed." *Held,* to be an exception from the operations of said

deed, reserved to the grantors, of the title in fee to the one-sixteenth of the oil in place in and underlying said tract of land, and to be delivered to her when produced as royalty, without expense to her for production.   (p. 354).

2.  OIL LEASE—*Reservation—Construction.*

H. afterwards leased said tract of land to L., with the exclusive right to operate and drill for oil and gas, reserving one-eighth part of all the petroleum obtained from said premises as produced in the crude state, to be set apart in the pipe line running said petroleum to the credit of lessor. *Held*, to be a reservation to the lessor of the one-eighth of the oil which was vested in her, and did not refer to or include the one-sixteenth which was outstanding in M.   (pp. 356, 357).

Appeal from Circuit Court, Tyler County.

Bill by Elizabeth J. Harris against Eugene M. Cobb and others.   Decree for plaintiff, and defendants appeal.

*Affirmed.*

P. A. SHANOR, A. B. HUNT, and DAVID STERRETT,. for plaintiffs in error.

T. P. JACOBS and E. L. ROBINSON, for defendant in error.

MCWHORTER, JUDGE:·

By deed dated July 25, 1896, Rachel A. Myers and James Myers, her husband, conveyed with general warranty to Elizabeth J. Harris, the wife of B. F. Harris, a tract of about fifty-two acres of land in Tyler County, which deed contained the following clause: "The parties of the first part reserve unto themselves and do not convey by this deed the equal one-half part of the usual royalty of one-eighth of all the petroleum or oil in and underlying the tract of land hereby conveyed," which deed was recorded in the clerk's office of the county court of Tyler County on the day of its date.   On the 23rd day of January, 1897, Elizabeth J. Harris and her said husband by deed of lease of that day granted to James Lowry the exclusive right to operate and drill for petroleum and gas, to lay pipe lines, etc., on the said tract of land, for the period of five years from the date of the lease, and so long thereafter as oil or gas could be produced in paying quantities.   "The party of the second part (James Lowry) his heirs or assigns, agrees to give the party

of the first part one-eighth part of all the petroleum obtained from said premises as produced in the crude state, the said one-eighth part of the pertoleum to be set apart in the pipe line running said petroleum to the credit and for the benefit of the said party of the first part." James Lowry by deed of assignment transferred and conveyed the same to James S. Glenn and Eugene M. Cobb, who assigned a portion thereof to L. E. Mallory. The last three named took possession and operated said leasehold and produced oil in paying quantities. On the 29th of January, 1898, Elizabeth J. Harris, L. E. Mallory, E. M. Cobb and James S. Glenn executed a division order, whereby they certified their ownership of the wells on the said leasehold and authorized the Eureka Pipe Line Company until further notice to receive for transportation and storage oil from said wells for said parties in the proportions named, to-wit: to Elizabeth J. Harris, one-eighth royalty, to L. E. Mallory and E. M. Cobb each seventy-thirty-seconds, and James S. Glenn fourteen-thirty-seconds, subject to their usual terms and conditions. Elizabeth J. Harris filed her bill in the circuit court of Tyler County against Eugene M. Cobb, James S. Glenn, L. E. Mallory, Rachel Myers, James Lowry and the Eureka Pipe Line Company, alleging the facts aforesaid, claiming under the reservation or exception in the said lease the one-eighth of all the oil produced in the crude state to be set apart in the pipe lines to her credit; that by the reservation in the said deed from Rachel A. Myers and husband the said Myers is entitled to another one-sixteenth of all the oil produced or to be produced from said tract of land; that notwithstanding her right to receive the full one-eighth of all the oil so produced and notwithstanding the division order in which said Cobb, Glenn and Mallory agreed that she should receive the one-eighth, yet they have not delivered the same to her, nor have they permitted the Eureka Pipe Line Company to deliver the same to her, but have induced said company to refuse to so deliver it to her, and prays that the defendants Cobb, Glenn and Mallory, and each of them, be required to answer her said bill and be required to discover, and say and disclose how much petroleum oil has been produced from said tract by them or either of them, and the value thereof at the respective times when produced and run into the pipe lines of said company, and that they and each of them may discover, say and disclose to the

court the amount of the royalty oil, to-wit, the one-eighth roy-
alty and the value thereof, belonging to plaintiff produced and
run into said pipe lines, and which they refuse to deliver, that
she have a decree therefor, and that said defendants be required
to perform, abide by and execute the covenants and agreements
contained in said lease and that a special receiver be appointed
if necessary to receive and take charge of said royalty oil under
the direction of the court, and for general relief, which bill was
sworn to. The defendant Lowry demurred to the bill, and filed
his answer, and defendants Cobb, Glenn and Mallory filed
their joint demurrer and answer, and Rachel A. Myers filed her
demurrer and answer, in all of which demurrers plaintiff joined
and to the answers replied generally. The deposition of B. F.
Harris was taken and filed on behalf of plaintiff, and on the 17th
day of August, 1899, the cause was heard upon the said plead-
ings, the bill taken for confessed as to Eureka Pipe Line Co.,
when the court overruled the demurrers, and ascertained that by
the deed of January 25, 1896, the defendant Myers in conveying
the tract of about fifty-two acres of land to plaintiff Harris
excepted and did not convey the equal one-half part of the usual
royalty of one-eighth of all the petroleum or oil in and underly-
ing the said tract of land; that plaintiff Elizabeth J. Harris by
her lease of January 23, 1897, to James Lowry leased and de-
mised to said Lowry the said tract of land for the purpose of
drilling and operating the same for the production of petroleum
oil and gas, in which she reserved and the said Lowry agreed to
give and yield to her the one-eighth part of all the oil produced
and obtained from said land as produced in the crude state, to
be set apart to her credit in the pipe lines; that said Lowry
assigned and transferred said lease to the defendants Cobb and
Glenn and subsequently and before this suit said Cobb and
Glenn assigned and transferred an interest therein to said Mal-
lory, and that the three last named defendants in pursuance
of said lease entered upon and developed said tract and pro-
duced therefrom oil in paying quantities; that said operators
have never delivered or paid any royalty of such oil to any
one, and ascertaining that of the oil produced and to be pro-
duced from said land Rachel A. Myers is entitled to the one-six-
teenth, the plaintiff Elizabeth J. Harris to one-eighth of fifteen-
sixteenths, and the defendants Cobb, Glenn and Mallory to the

remainder thereof, that is to say, that Rachel A. Myers is entitled to eight-one hundred and twenty-eighths of such oil, plaintiff to fifteen-one hundred and twenty-eights and the said Cobb, Glenn and Mallory together to one hundred and five-one hundred and twenty-eighths, and decreed its distribution accordingly, and it was decreed that the Eureka Pipe Line Co. deliver and pay over to said parties in said proportions the oil hereafter to be run into said pipe lines, and that of the royalty oil, now in the pipe lines said company should deliver to plaintiff an amount equal to fifteen-one hundred and twenty-eighths of all oil produced from said land and run into said lines, and shall then pay and deliver to said Rachel Myers the remainder, or eight-one hundred and twenty-eighths of the whole of said oil, if there be so much in the pipe lines, it being intended to dispose of the royalty oil accumulated during the pendency of the suit. The cause was referred to a commissioner to ascertain and report the amount of oil produced from said land and run into the pipe lines, the value thereof, and to whom the same has been paid and delivered, and in what proportion, and on motion of plaintiff K. S. Boreman was appointed a special receiver of the royalty oil three-sixteenths, to take charge of and sell the same at the best price obtainable when and as often as in his judgment should be prudent. From this decree the defendants Eugene M. Cobb, James S. Glenn and L. E. Mallory appealed, and say the court erred in decreeing that Elizabeth J. Harris is entitled to more than her proportionate part of the one-eighth of the oil reserved in her deed of lease. The question to be settled here is what share of the royalty is Elizabeth J. Harris entitled to receive? Rachel A. Myers had conveyed to her in fee the fifty-two acres of land, which conveyance had in it this provision: "The parties' of the first part reserve unto themselves and do not convey by this deed the equal one-half part of the usual royalty of one-eighth of all the petroleum or oil in and underlying the tract of land hereby conveyed." Before making this deed Mrs. Myers was invested with the title in fee to the whole, by that clause she remained so vested with the title to one-sixteenth of the oil. The language is not ambiguous, a plain statement that this proportion of the oil was reserved and *not conveyed,* and she held that part so reserved and not conveyed precisely as she had held the whole tract up to that time, and by

the said deed the title to the whole tract and every part thereof, except the one-half of the one-eighth of the oil so reserved and excepted was vested in Mrs. Harris, and over the whole premises and every part thereof, except this reservation and exception Mrs. Harris had absolute control. A conveyance by Mrs. Harris of the whole tract without mention of the reserved and excepted one-sixteenth part of the oil retained by Mrs Myers would in no wise disturb or affect the right or title of Mrs. Myers. Mrs. Harris' deed was a matter of record. The fifteen-sixteenths of the oil was vested in fee absolutely in Elizabeth J. Harris, and a sale by her of the same with a reservation and exception of any designated part or proportion of it could not apply to that which she never had, but was still vested in her vendor. Any reservation or exception made to herself must be of her own. How could she reserve to herself that which she never owned? In *Baker* v. *McDowell*, 3 W. & S. 358 (Pa. St.), B. was seized in fee of a tract of land, subject to an outstanding title to one-half of all iron ore found in the premises, conveyed the same to H. in fee "excepting and reserving to the said B., his heirs and assigns, the one-half of all iron ore found on the land." *Held*, to be a reservation to the grantor himself of that half of the ore which was vested in him, and not a mere notice or reservation of the other half which was outstanding. It is contended by appellants that the reserving clause in the deed from Myers to Harris is simply a reservation, not an exception, that it did not reserve any of the oil in place, but "reserved a one-half of the usual royalty of one-eighth of said oil when produced." The language of the reservation does not warrant such construction. "The parties of the first part reserve unto themselves and *do not convey* by this deed the one equal one-half part," etc. The parties were conveying real estate and their declaration that they were not conveying or intending to convey a certain part of a substance as much a part of the real estate as the soil itself and as much a subject of transfer by deed as coal, iron or other mineral, clearly made it an exception. It might have been different if the reservation had been expressed as appellants would have it, that she "reserved a one-half of the usual royalty of one-eighth of said oil *when produced.*" This might have been construed to mean a reservation to take effect only when the tract was developed and the oil produced, but it

was excepted from the effect of the deed, and the absolute title to the one-sixteenth of the oil remained in the vendor. Describing it as royalty did not change the character of the substance. Yet the use of the word royalty carries with it right to have the same delivered to her without expense of reproduction. "An exception in a deed is always part of a thing in being and a part of the thing granted; while a reservation is of a thing not in being, and is newly created, as rent and the like. An exception withdraws from the operation of the conveyance some part of the thing granted, which but for the exception would have passed to the grantee under the general description; while the reservation is the creation, in behalf of the grantor, of some new right, issuing out of the thing granted,—that is to say, something which did not exist as an independent right." *Snoddy* v. *Bolen,* 122 Mo. 479. As in that case, there can be no doubt that the words expressed in the deed that they "do not convey by this deed," the part of the oil to which they retain title amount to an exception, the thing excepted from the grant being a certain part of the oil which proved to be the chief element of value of the property conveyed. The oil so excepted remained in the grantor in the same right as before the grant, and being a subject of grant and exception, when excepted in the deed, became a separate and distinct inheritance. Bar & Adams Mines & Mng., 84. In *Baker* v. *McDowell* cited, Chief Justice Gibson says: "The reservation of Blair's heirs was therefore unnecessary to secure anything but their own moiety of the ore,—certainly not to apprize their grantee of the existence of Henderson's reservation. of which lying as it did in the channel of the title he was purchasing he was bound to take notice. It is possible they may have been so far mistaken in their judgment of the law as to think otherwise, but in that case why declare the reservation to be, not for Henderson, but for themselves. If the purpose was to show conclusively that his, Henderson's, part of the ore was not intended to be conveyed, the obvious way to effect it was to convey the land expressly subject to his interest in it. A clause to that effect would have evinced an intent not to be mistaken, but that this reservation was introduced to except what did not belong to the grantors is all together improbable. Why reserve that which they had no power to pass. Were we at liberty to weigh probabilities we would have more reason to think that they actually intended to reserve the moiety of the ore for their own

use than that they intended to guard themselves from future difficulty in regard to their prior reservation, but though the deed is to be interpreted so as to accord as nearly as may be with the apparent intent of the parties, we are not to be governed by conjecture in regard to the actual state of it. We are furnished with guides to greater certainty of result, and at least an equal chance to reach the actual meaning. * * * * Now by referring this reservation to Henderson's moiety we would deprive it of its power, for his reservation had left nothing remaining but the other moiety, to be the subject of another exception; but by referring it to that other moiety we put all the parts of the instrument in harmonious action. Its legal effect therefore is to except from the grant that which is susceptible of exceptions, the part of the ore which was the property of the grantors." When Elizabeth J. Harris executed the lease to James Lowry, he agreeing to give her the one-eighth part of the oil obtained from said premises as produced in the crude state, it could have had no reference to the estate outstanding in Rachel Myers, but to that alone vested in the lessor; the estate of Mrs. Harris was well defined, the lessee not only had constructive notice of the reservation and exception in the deed of Mrs. Myers by its recordation, but he had actual notice of it, said he "knew just what there was in it," (the deed), and Cobb and Glenn had the clause in the deed specially called to their attention, and had actual notive of it if that were necessary. Appellants contend that the lease from Harris to Lowry granting him the exclusive right to operate for oil and gas for the consideration of one-eighth royalty was in effect granting to Lowry and his assigns seven-eighths of the oil produced, and she had the right to make such conveyance, as the title to fifteen-sixteenths of the oil and gas under the premises was undeniably hers. I presume being the absolute owner of fifteen-sixteenths of all the oil in the premises Mrs. Harris could have conveyed seven-eighths. But did she, is the question in this case. Her interest was a subject of contract. Lowry knew what she had, and also was perfectly cognizant of what portion of the oil was still vested in Mrs. Myers and their interests were distinct and separate, and they were as strangers, and it was perfectly competent for Lowry to deal with either of them separate from the other, and this is what he did in purchasing seven-eighths of Mrs. Harris' oil and leaving the interest of Mrs. Myers in her hands to be settled for. The second

assignment of error is that the court erred in decreeing a priority in favor of Mrs. Harris over Mrs. Myers for the oil in the pipe lines now designated as royalty. In response to this, Mrs. Myers is not here complaining of the decree and appellants are not prejudiced by it, and further it is hard to conceive how there could be a shortage, as it is a division of oil, the amount of which is certain. The third assignment, that the court erred in appointing a special receiver, is not mentioned in the brief of appellants, and I take it they do not rely upon that point, and the circumstances of the case seem to make such appointment proper. The fourth and last assignment is in substance and effect the same as the first.

I think the decree of the circuit court is right, and it is affirmed.

DENT, JUDGE, (*concurring*) :

The lease in this case from Mrs. Harris to James Lowry does not as in the ordinary oil and gas lease grant the oil, but only grants the privilege of searching for oil, and if it is found, the grantee agrees to give her "the one-eighth part of all the petroleum obtained from said premises as produced in the crude state." There is no provision made as to the other seven-eighths, except impliedly the lessee is to retrain it, and she releases any claim to it in accepting the one-eighth.

There is nothing said in the lease with regard to Mrs. Myers' reservation, as it appears to be of a sixteenth royalty, rather the one-sixteenth of the oil in place. For if it was an exception of the oil in place she would have to pay one-sixteenth of the expense of producing it, which the reservation by use of the term royalty forbids. There being no grant of the oil, a warranty could not be implied and the lease cannot be construed to be anything else than the privilege of the retention of seven-eighths of the oil in so far as Mr. Harris is concerned. One-eighth she is to have. This she bargained for, and of this the law does not and the court ought not to deprive her by construing the contract contrary to its express terms. Three times during the present term this Court has held that parol evidence is inadmissible to vary, contradict or explain a written contract unambiguous on its face. *Buena Vista Co.* v. *Billmyer, Knowlton* v. *Campbell, McCoy* v. *Camden,* and now it is proposed by mere

construction to vary a written contract which is plain and unambiguous on its face by making it read instead of one-eighth of all the oil produced, one-eighth of the fifteen-sixteenths of the oil produced, thus substituting "fifteen-sixteenths" for the word "all." The word all is very expressive, and there is nothing ambiguous about it. Then why break the rules of construction and make a new contract between the parties. Mrs. Harris was to have one-eighth of the oil when found as consideration for the privilege of searching for it. One-sixteenth of it was already Mrs. Myers'. And the lessees have the right to retain the residue thereof, only impliedly, however, for they have no direct grant of it from any one. The decree should be amended so as to give Mrs. Harris her full one-eighth and Mrs. Myers one-sixteenth, and the residue, thirteen-sixteenths, to the appellants, and as amended affirmed.

Mrs. Harris through her attornies having waived the right to have the decree amended in her favor I concur in the affirmance of the decree as it was pronounced in the circuit court.

*Affirmed.*

BRANNON, PRESIDENT, *(for reversing)* :

Mrs. Harris leased *all* the oil in the tract of land to Lowry. When she did so there was paramount title in Mrs. Myers to a sixteenth of the oil, and thus the implied warranty which exists in a lease for good title was that instant broken, and Lowry or his assignees cannot be called upon to pay Mrs. Harris the full rent of one-eighth, and besides pay Mrs. Myers her sixteenth also, and thus make Lowry pay rent as if he got the whole of the oil, and yet lose a sixteenth by reason of failure of title in the lessor. Lowry only agreed to pay Mrs. Harris one-eighth of the oil in consideration of getting *all* the oil, and not getting it, he should not be compelled to pay the full rental to Mrs. Harris. She should discharge that incumbrance to Mrs. Myers. I hold that Mrs. Myers is entitled to one-sixteenth of the oil, Mrs. Harris to one-sixteenth, and Cobb, Glen and Mallory the balance. The case of *Baker* v. *McDowell,* 3 W. & S. 358, was a conveyance with special warranty, while here there is a general warranty.