## Gillispie v. Sam and Sarah Blanton.

## Gillispie v. Wheeler.

(Decided January 26, 1926.)

### Appeals from Johnson Circuit Court.

1.  Reformation of Instruments—Proof Must be Full, Clear, and De-
    cisive to Authorize Alterations of Executed Written Contract.—
    Mere preponderance of evidence is not enough to authorize altera-
    tion in terms of executed written contract, but proof must be full,
    clear, and decisive, and mistake must appear beyond reasonable
    controversy.
2.  Reformation of Instruments—Evidence Held Insufficient to Sup-
    port Reformation or Cancellation of Oil Lease.—Evidence held in-
    sufficient to support reformation or cancellation of oil and gas
    lease, providing that agreed royalty should include any outstand-
    ing royalty or interest.
3.  Mines and Minerals—Grantee's Right to Royalty from Oil Land
    Terminated with Lease Mentioned in Conveyance.—Under deed
    conveying one-eighth of oil under certain land, subject to valid
    lease while it remained in force, but conveying whole of royalty
    under such lease, right to royalty terminated on expiration of
    lease, and grantee owned only one-eighth interest in fee of oil
    under land.
4.  Tenancy in Common—Cotenant of Lessor of Oil Rights Held En-
    titled to Royalty on His Share Only.—Where owner of eleven-
    twelfths of oil rights in land leased them, believing he owned all
    rights in land, owner of other one-twelfth was entitled, as to oil
    produced before action, to customary royalty on his one-twelfth
    share only.
5.  Tenancy in Common—Cotenant of Lessor of Oil Rights Held En-
    titled to Share of Production, Less Costs.—Where owner of eleven-
    twelfths of oil rights in certain land leased them, believing he
    owned all rights to land, owner of other one-twelfth was entitled
    to his one-twelfth of all oil produced after bringing of action, less
    its pro rata part of cost of development and production.

O'REAR, FOWLER & WALLACE and JOHN H. GARDNER for
appellant.

I. L. AUXIER and W. H. VAUGHAN & SON for appellees.

D. J. WHEELER pro se.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE—
Reversing.

The appellees in the two above styled actions, Sam
and Sarah Blanton, are husband and wife. He owns a

small tract of land in Johnson county containing 38 acres. On January 3, 1922, they leased it to appellant, R. G. Gillispie, to develop for oil and gas. By the royalty clause in the lease appellant agreed "to deliver to the credit of the first parties, their heirs or assigns, free of cost in the pipe lines to which party of the second part may connect his wells, the equal one-eighth part of all oil produced and saved from the leased premises, in which rent shall be included any royalty or interest in said oil that may have been heretofore sold, reserved or conveyed by said lessors or their predecessors in title." Under that lease appellant Gillispie, in the latter part of the year 1922, proceeded to develop the premises for oil and gas by drilling wells thereon. Oil was found, following which the controversy arose resulting in these two actions, which have been consolidated.

As between appellant Gillispie and appellees, the Blantons, it appears that prior to their leasing to him the 38-acre tract they had leased it to another, the lease eventually becoming the property of the Mid-South Oil Company. After the execution of the first lease the Blantons by deed conveyed to Ralph Stafford a one-eighth interest in the oil and gas in and under the land. The former lease was permitted by its owners to lapse by failure to comply with its stipulations. When appellant Gillispie came to lease the 38 acres a release to Blanton of the former lease was procured from the Mid-South Oil Company. While the parties were negotiating the deal for the last lease the fact that the Blantons had conveyed an interest in the oil and gas was discussed between them, and both Gillispie and they appear to have been desirous of repurchasing for them the outstanding interest before the lease deal should be closed. Looking to that end negotiations were taken up with Stafford with the result that he agreed to reconvey to Blanton such interest in the oil and gas under the 38-acre tract as he then owned which he had obtained by the deed from the Blantons to himself. A deed was prepared which Stafford executed to carry out his agreement. The evidence is undisputed that the $350.00, the cash consideration which Stafford received for reconveying to the Blantons, was paid by check of appellant Gillispie made payable to the Blantons, which specified that it was the cash consideration for the 38-acre lease. Blanton indorsed it to Stafford. The lease from Blanton and wife to Gillispie recites on its face that it was executed for a

cash consideration of $350.00. Stafford testified that under the agreement he was to be paid $500.00 for the conveyance, $350.00 to come from Gillispie and $150.00 to be paid by Blanton. Blanton's testimony was very uncertain and unsatisfactory on that point. The deed by which Stafford reconveyed to Blanton such interest as he then owned in the oil and gas recited a consideration of $1.00 and other good and valuable considerations paid and receipted for. After the execution of the deed by Stafford and wife to Blanton, and after the release from the Mid-South Oil Company had been procured, the lease from Blanton and wife to Gillispie, which had theretofore been prepared and was being held in escrow, was delivered to appellant and his check for $350.00 payable to Blanton, and which he had indorsed, was delivered to Stafford. The evidence herein beyond question establishes that when this deal was consummated appellant Gillispie in good faith believed that Stafford had reconveyed to Blanton all the interest that Blanton had previously conveyed to him. It appears with equal certainty that Blanton also in good faith so believed. However, after the venture proved a success by the discovery of oil in paying quantities, it was ascertained that before Stafford reconveyed to Blanton he had conveyed to George I. Neal and J. I. Miller two-thirds of the one-eighth interest in the oil and gas which the Blantons had conveyed to him. They in turn had conveyed that interest to appellant, D. J. Wheeler. Those deeds had been recorded. Wheeler claimed one-twelfth of the oil and gas produced and saved from the 38-acre tract of land under his deed and gave notice of his ownership and claims to the Cumberland Pipe Line Company, through which the oil was being marketed. He sued to assert his rights. Thereupon appellees, the Blantons, instituted an action to reform the lease they had given Gillispie, and especially the rental clause quoted above, alleging that the contract was that he would purchase back for them the entire interest in the 38 acres which they had conveyed to Stafford; that he procured the reconveyance from Stafford and represented to them that it was the entire outstanding interest; that the true contract was that they should have as royalty the full one-eighth of all the oil produced and saved from the premises; and that that part of the lease and of the royalty clause providing that their one-eighth royalty should include any royalty or interest theretofore sold, reserved or conveyed by les-

sors or their predecessors in title was incorporated into the lease by fraud or mistake. They sought also to have it adjudged that they were entitled to receive the full one-eighth part of all the oil that might be produced and saved from the premises and to have the lease reformed so as to so provide; and, in the event that could not be done, they sought to have the lease cancelled as having been procured by fraud.

Issue was properly joined and a trial was had below resulting in the judgments from which this appeal has been prosecuted. There is perhaps as much controversy between the parties as to what the judgments herein mean and what the rights of the parties are under them as about any other feature of the litigation. This court feels, however, that it is sufficient to settle finally the issues raised herein by the pleadings and proof.

This court has often written the rule as to the character of proof necessary to authorize a court of equity to decree the reformation of a written contract. As was said in Royer Wheel Company v. Miller, 14 Ky. Law Rep. 831:

"Indeed, in no case will a court decree an alteration in the terms of a duly executed contract unless the proofs are full, clear and decisive; mere preponderance of evidence is not enough; the mistake must appear beyond reasonable controversy."

See also Coleman v. North American Life Ins. Co., 26 Ky. Law Rep. 900; Glenn v. Hollingsworth, 206 Ky. 392; Griffith v. York, 152 Ky. 16; Cook v. Day, 168 Ky. 282; Dotson v. Hunt, 207 Ky. 832; Daniel Boone Coal Company v. Crawford, 203 Ky. 666.

With reference to the royalty clause of the lease which appellee Blanton seeks herein to have reformed, he testified as follows:

"Q. Did you know that there was a provision in that lease to the effect that if this title was not perfect and if there was any outstanding interests in the oil, it would be taken from your oil? A. They knew all about it. They looked at the records. Q. Did you know that there was a provision in the lease to that effect? Defendant objects. A. I don't know; I can't read. Q. Did they tell you about it, and when did you first find it out? A. I never found it out until this talk got out about him swearing that the deed

was not good. Q. How long was that after you executed the lease? A. After the well was drilled in. Q. You say you did not know about the lease having that in it? A. I did not recollect it. I never heard of it—it might have been in the lease. Q. Did you go to Mr. Heltzel about it? A. He said it was the form of the lease; that it was in all of them. Q. Did he say anything about whether or not you were to get one-eighth regardless of that? A. I don't think he said. Q. Did you tell him at that time that you did not know it was in there? A. I don't know whether I did or not."

He admitted that the lease was read to him by the notary who took his acknowledgment before he signed it, and it appears that a copy of the lease was in his possession some time before this deal was finally closed. The agent for appellant who took the lease testified that the lease in all particulars and the royalty clause especially as written and executed by the parties declared the exact contract made between them. Appellee, Sam Blanton, testified that he declined to lease the 38 acres unless appellant would repurchase for him the royalty interest he had theretofore conveyed to Stafford, and that Mr. Heltzel, who acted for appellant in the matter, agreed with him that he would repurchase that interest for him. Mr. Heltzel denied all of that testimony. The other facts and circumstances appearing in the record contradict rather than corroborate appellee Blanton on that question. The lease he gave to appellant recited that it was executed for $350.00 cash, and he admitted having received the check for that amount filed in evidence. Stafford testified that he was to be paid $500.00 for a reconveyance of the oil and gas interest to Blanton, $350.00 to come from appellant as the purchase price of the lease he should get, and the other $150.00 to be paid by Blanton. Blanton's testimony on that subject was so uncertain and unsatisfactory as to amount to a virtual acknowledgment that he agred to pay Stafford $150.00 more than he got for the lease on the 38 acres. When interrogated about it the strongest he could put it was that he didn't remember it if he promised to pay Stafford $150.00 more than the $350.00 he got for the lease. The most that can be said is that there is mere conflict of evidence here, and the evidence as a whole rather establishes that appellee Blanton did not require appellant Gillispie to repurchase

for him the outstanding interest in the oil and gas before he would lease, and did not execute and deliver the lease to Gillispie upon the latter's representation that the deed from Stafford to him reconveyed to him that entire interest. It establishes that appellee Blanton undertook to repurchase the outstanding interest and to get enough money from appellant as bonus for the lease to do that. Appellant was unwilling to pay more than $350.00 for the lease in question. Blanton was present during all the negotations with Stafford for the repurchase of the outstanding interest, and none of the testimony offered for the Blantons, except that of Sam himself, is at all inconsistent with Gillispie's testimony and claims herein. None of the parties at the time appear to have known of Stafford's having previously conveyed a portion of the interest in the oil and gas he had purchased, and appellee Blanton closed the deal with him thinking that he was repurchasing the entire outstanding interest. The evidence in the record herein will not support a judgment either for a reformation of the lease or for its cancellation.

The deed by which the appellees, Sam Blanton and his wife, conveyed the interest in the oil and gas in the 38-acre tract to Ralph Stafford contains this granting clause: "Do hereby grant and convey by deed of general warranty unto the party of the second part, his heirs and assigns forever, the whole one-eighth part of all the oil and gas in and underlying and produced from the following described piece or parcel of land, together with the right and privilege of the land for oil and gas." The tract of land was then described in the deed, following which this clause appears: "Subject to any valid lease for oil and gas now on the premises, only while the same remains in force, but hereby granting and conveying the whole part of oil royalty and rents reserved under such lease or leases." It becomes necessary next to determine what interest the grantee, Stafford, took under that deed. As recited by it there then was in existence an oil and gas lease covering the tract of land described, and, as is made perfectly plain by the language of the deed, they intended that if the 38-acre tract should be developed for oil under that lease and oil should be found, the grantee, Stafford, should have the full one-eighth royalty reserved by it. The lease referred to in the deed above, however, lapsed for nonpayment of rentals and was released and surrendered by the lessees. This court has concluded that under the deed above, upon the expiration of the lease

referred to in it, the grantee's right to a full one-eighth of the oil that might be produced from the 38-acre tract as royalty terminated. The grantee, Stafford, thereafter merely owned under the deed above an undivided one-eighth interest in fee in the oil in and underlying that tract of land. Unquestionably under the terms of that deed the grantee, Stafford, necessarily would have to be a party to any lease given thereafter covering his interest in the oil and gas in place. That being true his right to one-eighth of the oil and gas in, underlying and produced from the 38-acre tract necessarily would have to be charged with its *pro rata* part of the cost of producing it. The deed from Stafford to Neal and Miller necessarily conveyed to them two-thirds of only such interest in the oil and gas in and under the 38-acre tract as had been conveyed to Stafford. The same thing is true of the deed from Neal and Miller to appellee Wheeler. The Blantons had never parted with the title to the undivided seven-eighths interest in the oil and gas which they retained when they conveyed the one-eighth to Stafford. Stafford conveyed two-thirds of the one-eighth or one-twelfth to Neal and Miller which they in turn conveyed to appellee Wheeler. Stafford retained one-third of the one-eighth or one twenty-fourth of the oil and gas. He subsequently and before the lease from Blanton and wife to Gillispie was executed reconveyed that interest to them. So that when that lease was executed the Blantons owned an undivided eleven-twelfths of the oil and gas, and Wheeler an undivided one-twelfth thereof as it lay in place in and under the 38-acre tract of land. Wheeler did not join in the lease. Appellant Gillispie, who by his lease from the Blantons acquired the right to explore and develop the 38 acres for oil, as to eleven-twelfths of the estate in fee therein might develop under and be protected by that lease to that extent. Appellee Wheeler owns the outstanding one-twelfth interest in the oil and gas in place not covered by the lease. Appellant Gillispie and appellees, the Blantons, were in utmost good faith. When the lease was executed all of them in good faith believed that the Blantons owned the entire estate in the oil and gas underlying the 38-acre tract of land and that it was leased to Gillispie to be developed for oil and gas under the terms of the lease. Actual knowledge of the fact that there was an outstanding interest was not brought home to them until after a well had been completed which proved productive of oil in paying quanti-

ties.  The rights of the parties in that state of case have heretofore been considered and determined by this court in an elaborate opinion, in New Domain Oil & Gas Company v. McKinney, 188 Ky. 183.  Reference to that opinion will disclose that Wheeler, the owner of the outstanding interest, in the state of case here presented, is not entitled to recover the full one-twelfth of the oil and gas that has been and may be produced from the lease, as was adjudged herein.  The development of the lease having been made by his cotenant, who owned eleven-twelfths of the entire estate in the oil and gas, Wheeler's undivided one-twelfth of the oil and gas in place, must be charged with its *pro rata* part of the cost of development and production of the oil.  Under authority of the New Domain Oil & Gas case, *supra,* of the oil produced prior to the institution of this action, Wheeler was entitled to the customary royalty shown to be one-eighth, but not one-eighth of the entire amount of oil produced but of his one-twelfth interest therein, or one ninety-sixth of the entire amount produced.  After the institution of this action he was entitled to an accounting and to recover one-twelfth of the value of the oil produced, less its *pro rata* part of the cost of development and production. Reference to the New Domain Oil & Gas opinion, *supra,* will disclose the reason and authorities and a more elaborate discussion of the conclusions herein reached, as well as the method of charging Wheeler's interest with its part of the cost of production.

The judgment of the chancellor is wholly at variance with our conclusions herein set forth.  For that reason it is reversed and the cause is remanded, with direction that a judgment in conformity herewith be entered herein.