## Texas Co. v. Bowen et al.

Jan. 15, 1943.

McDonald & McDonald for appellant.

Clarence Miller for appellee.

OPINION OF THE COURT BY JUDGE SIMS—Affirming.

This appeal involves the construction of a deed conveying an interest in the oil and gas under 90 acres of land located in Estill County. It is the contention of the appellees, Lillie Wells Bowen, Lonnie and Lloyd Wells, and Harry R. Witt, plaintiffs below, that the deed conveyed to their predecessors in title a 1/32 royalty interest in the oil and gas under this land. While appellant, the Texas Company, defendant below, insists that appellees only acquired through the conveyance a 1/32 of 1/8 royalty, or 1/256 royalty of the oil and gas. Therefore, the interest in dispute is the difference between a 1/32 royalty interest and 1/32 of a 1/8 royalty, or 7/256.

The case was submitted on the pleadings, exhibits and a stipulation. The chancellor adjudged appellees to be the owner of a 1/32 royalty interest in the oil and gas, and the Texas Company appeals.

The pertinent part of the deed to be construed reads:

"That said parties of the first part (J. P. Helphinstein and wife) for and in consideration of $1,000 * * * do hereby sell, grant and convey to the parties of the second part (Lewis and Polly Townsend) their heirs and assigns, the following described property. (Here follows description).

"To have and to hold the same together with the surface of the land and 1/32 part of Royalty. It is further understood that the parties of the first part *is* only selling to parties of the second part, the surface of said land and 1/32 part of all oil and gas lying in and under said land, parties of the first part *reserves* the right to release (re-lease) in case the lease now in force becomes null and void. * * *

"To have and to hold the same, together with all the appurtenances thereunto belonging unto the parties of the second part their heirs and assigns forever with covenant of general warranty."

The deed just quoted bears date of April 13, 1919, at which time there was an oil and gas lease covering the land but it had not been developed. This lease reserved a 1/8 royalty interest in these minerals to Helphinstein, which was the only interest he then owned in the oil and gas. By mesne conveyances appellees acquired the interest in the oil and gas which this deed conveyed to the

Townsends. The oil and gas lease which covered the land at the time the deed to the Townsends was executed was cancelled by agreement of parties to the lease, and Helphinstein and wife on May 22, 1922, leased the oil and gas to G. W. Darrell, which by mesne conveyances was assigned to Southwestern Petroleum Company and Cliff Petroleum Company. Thereafter on March 31, 1924, Helphinstein executed to the Southwestern and Cliff companies what is referred to in the petition as a deed of correction which recites he sold 3/32 royalty in the oil and gas to these two companies. This conveyance set out that 1/32 part (without designating it a royalty interest) previously had been conveyed to the Townsends, and in case the then existing lease should be cancelled the Southwestern and Cliff companies, their successors and assigns forever, should have 31/32 of the oil and gas. The Texas Company acquired the interest of the Southwestern and Cliff companies which gave it the entire oil and gas in the land subject to whatever interest appellant took through the Townsends. After the Texas Company became the owner of all oil and gas in this land except the interest of the appellees, it executed an oil and gas lease thereon to H. W. Ross, reserving for itself 1/8 royalty subject to any interest which might be outstanding and not owned by lessor.

The stipulation referred to in the second paragraph of the opinion recites that Helphinstein would testify, subject to competency and relevancy, that it was his intention to and he did sell the Townsends a 1/4 of his 1/8 royalty, and he placed a value of $650 on the 1/32 royalty sold them. It cannot be doubted that the first paragraph of the habendum in the deed under consideration is ambiguous as to what part of the oil and gas was conveyed the Townsends, who were appellee's predecessors in title. While parol evidence may not be admitted to vary or contradict a written contract, yet where ambiguous or uncertain terms are used such evidence may be heard to the end that their true meaning may be ascertained by the court. Boone, Foreman & Lackey v. Halteman & Cave Ins. Agency, 226 Ky. 839, 11 S. W. (2d) 973; Bullock v. Young, 252 Ky. 640, 67 S. W. (2d) 941; Blevins v. Riedling, 289 Ky. 335, 158 S. W. (2d) 646. But where the ambiguity is patent or appears on the face of the instrument, the prevailing view is that parol evidence is not admissible to explain such ambiguity. 10 R. C. L.

1068, sec. 263; Day v. Asher, 141 Ky. 468, 132 S. W. 1035; Kentucky Coal Lands Co. v. Smith, 149 Ky. 794, 149 S. W. 979. Also see annotations in 6 L. R. A., N. S., 954. As the ambiguity is patent and appears on the face of the habendum of the deed under consideration, it follows that the stipulation as to Helphinstein's testimony cannot be considered.

It is the contention of the appellant that the deed from Helphinstein to the Townsends conveyed the grantees therein 1/32 of the oil in the land and appellees as successors in title of the Townsends would be entitled to a 1/256 royalty, being 1/32 of the 1/8 royalty reserved in the lease appellant executed to Ross; while appellees insist the Townsends were conveyed a 1/32 royalty interest.

Appellees put much reliance in Harris v. Cobb, 49 W. Va. 350, 38 S. E. 559; Callahan v. Martin, 3 Cal. (2d) 110, 43 P. (2d) 788, 101 A. L. R. 871. However, we find these cases of but little assistance. The deed in Harris v. Cobb reserves "one-half part of the usual royalty of one-eighth of all the petroleum or oil in and underlying the tract of land hereby conveyed. It cannot be doubted that this was a reservation of 1/16 royalty interest, and the court so held. The Callahan case held that an assignment of part of an oil and gas royalty transferred an interest in real estate, which is the rule in this jurisdiction as was written in Williams' Adm'r v. Union Bank & Trust Co., 283 Ky. 644, 143 S. W. (2) 297, 131 A. L. R. 1364.

Appellant rests its case on Gillispie v. Blanton, 214 Ky. 49, 282 S. W. 1061. The deed is quoted on page 1064 of that opinion [282 S: W.], the granting clause of which conveys to the grantee, his heirs and assigns forever, "the whole one-eighth part of all the oil and gas" in the land. After the description there follows this sentence:

"Subject to any valid lease for oil and gas now on the premises, *only while the same remains in force,* [our italics] but * * * conveying the whole part of oil royalty and rents reserved under such lease or leases."

The opinion there held that the grantee took a 1/8 royalty in the oil under the lease then in effect, and after it expired he took 1/8 interest in the oil; and upon the exe-

cution of a new lease his royalty would be 1/8 of the usual 1/8 royalty, which would be a 1/64 royalty.

The soundness of the Blanton opinion cannot be questioned seriously, since the deed limited the entire royalty to the particular lease then in force and then conveyed 1/8 of the oil and gas. But in the instant case the only interest in the oil and gas the grantor Helphinstein owned at the time of the conveyance to the Townsends was a 1/8 royalty. Nor did Helphinstein limit to the then existing lease the interest he conveyed the Townsends—on the contrary he conveyed it to them and their assigns forever with covenant of general warranty. These facts to our minds clearly distinguish the case under consideration from Gillispie v. Blanton, 214 Ky. 49, 282 S. W. 1061.

Helphinstein awkwardly described the interest conveyed as "1/32 part of royalty". He used further ambiguous language in the next sentence, reciting he was selling to the Townsends "the surface of the land and 1/32 part of all oil and gas lying in and under said land". But he reserved the right to re-lease the land for oil and gas development in case the current lease became void. This is rather convincing that he intended to convey a royalty interest to the Townsends because if they owned such an interest, they would have but little concern with the terms of a new lease and none with what royalty was reserved. While if they had taken a 1/32 working interest, they would have been concerned in what royalty was reserved and in their fractional part of any bonus the lease might bring; and likely they would have wanted some voice in the terms of the lease.

When Helphinstein executed the deed to the Townsends the only interest he owned in the lease was 1/8, or 4/32, royalty. While the record is not absolutely clear on the subject, we gather from the pleadings and exhibits that the Southwestern and Cliff companies acquired the 7/8 working interest in the lease and subsequently acquired from Helphinstein 3/32 royalty interest, all of which they conveyed to appellant, The Texas Company. When Helphinstein conveyed 3/32 of royalty to the Southwestern and Cliff companies, the deed recited that in the event the existing lease expired, they would own all the oil and gas under the land except the 1/32 part theretofore conveyed to the Townsends. Although the conveyance just referred to does not describe the 1/32

interest conveyed to the Townsends as a royalty, there can be no doubt it was. Otherwise, what became of the other 1/32 royalty interest of the 4/32 royalty owned by Helphinstein? He conveyed what he described as "1/32 part of royalty" to the Townsends and subsequently conveyed 3/32 royalty interest to the Southwestern and Cliff companies, reciting that they owned all interest in the oil and gas except the 1/32 interest outstanding in the Townsends. As nothing in the record shows Helphinstein disposed of an interest in his 4/32 royalty to other parties, and as he is not now claiming any royalty interest in these minerals, it is evident that the interest he conveyed to the Townsends was a 1/32 royalty, and not a 1/32 of his 1/8 royalty.

Appellant mildly suggests the appellees did not prove title to their interest in these minerals. As we interpret the pleadings they do not raise the question of title, but only ask the determination of what interest the Townsends took under the deed executed by Helphinstein.

Judgment affirmed.