R. H. HARRIS V. STEPHEN C. CURRIE ET AL.

No. 8145. Decided December 15, 1943.
Rehearing overruled January 5, 1944.
(176 S. W., 2d Series, 302.)

94

*Hughes & Hardeman* and *R. G. Hughes,* of San Angelo, for petitioners.

Where petitioner and others have executed oil and gas leases to an oil company, providing therein for the payment of delayed rentals, which leases were promptly recorded in the county where the lands were located, and thereafter petitioner conveyed to respondents a one-half interest in the minerals and royalty payments reserved in a former deed, it was error for the court of civil appeals to hold that respondents were thereby assigned or conveyed any of the delay rentals provided in the leases and paid to petitioner, or which accrued subsequent to the date of such instrument. Caruthers v. Leonard, 254 S. W.

779; Hagar v. Stakes, 116 Texas 453, 294 S. W. 835; Andrews v. Brown, 283 S. W. 288.

*Robt. T. Neill,* of San Angelo, for respondents.

MR. JUSTICE CRITZ delivered the opinion of the Court.

On and prior to March 7, 1928, F. L. Harris and R. H. Harris owned jointly, as cotenants, about 40,320 acres of land, consisting of 63 surveys in Tom Green, Sterling, and Irion counties, Texas. On the date just mentioned, R. H. Harris and F. L. Harris, joined by their respective wives, made deeds to one another. By one deed, R. H. Harris, joined by his wife, conveyed to F. L. Harris his undivided one-half interest in the 63 surveys above mentioned. By the other deed, F. L. Harris, joined by his wife, conveyed to R. H. Harris his undivided one-half interest in about 26,906 acres of land in Coke County, Texas. Each of these deeds contained the following mineral or royalty provision:

"The said R. H. Harris (or F. L. Harris as the case may be) by his wife, conveyed to R. H. Harris his undivided one-half interest in and to all oil, gas, or other minerals of whatsoever kind that may be found in, on or under the above described lands during a term of fifteen (15) years next ensuing after date of this deed and no part of same is conveyed by this deed.

"And it is further agreed that if any development of the oil, gas or mineral rights on said lands is begun under any lease or drilling contract during the next fifteen (15) years, and such royalty payments are begun to accrue within the said term of fifteen years, that when once begun or having accrued within the said time they shall continue thereafter to be paid in equal one-half portions to the said R. H. Harris and F. L. Harris as long and whenever such royalty payments shall be made without respect to the time or term thereof."

On February 20, 1941, Lula C. Harris, widow of F. L. Harris, deceased, and R. H. Harris executed and delivered to Humble Oil & Refining Company a ten-year oil and gas lease, covering eight sections of land in Sterling County, Texas. These eight sections constituted a part of the 63 sections covered by the deed dated March 7, 1928, from R. H. Harris and wife to F. L. Harris. It will here be noted that this lease was made within the fifteen-year mineral reservation named in such deed. This lease contract states that Lula C. Harris, a feme sole, and R. H. Harris and wife are "lessor (whether one or more)" and that

Humble Oil & Refining Company is lessee. Also, this lease provides for annual delay rentals in the sum of $2,560.00 per year for ten years, under the usual "unless" clause. This lease also provides that these rentals shall be paid to "lessor or to credit of lessor" in a named bank.

On February 20, 1941, the same date as the oil and gas lease just mentioned, Lula C. Harris, surviving widow of F. L. Harris, deceased, and R. H. Harris executed and delivered to Humble Oil & Refining Company another ten-year oil and gas lease, covering 12 sections of land in Sterling County, Texas. These 12 sections also constituted a part of the 63 sections covered by the deed dated March 7, 1928, from R. H. Harris and wife to F. L. Harris. In all other respects the two leases are identical, except this lease provides for annual delay rentals in the sum of $4,480.00.

On December 22, 1941, R. H. Harris, described as "party of the first part," and S. C. Currie and E. M. Wahlenmaier, described as "parties of the second part," entered into a written contract with each other. We here refer to the opinion of the Court of Civil Appeals for a full statement of the contents and other circumstances surrounding this contract. It is sufficient to here state that it does not mention the Humble Oil & Refining Company lease. This contract contains the following clause of conveyance:

"In consideration of the foregoing R. H. Harris does hereby grant, bargain, sell and convey to E. M. Wahlenmaier and Stephen C. Currie the one-half ($\frac{1}{2}$) interest in all oil, gas and other minerals and royalty payments reserved by R. H. Harris in his deed heretofore described to F. L. Harris in the following surveys in Block Six (6), H. & T. C. Ry. Co., Sterling County: (Here was inserted a description of the 20 sections by number covered by the two Humble leases.)"

On February 20, 1942, during the fifteen-year period provided for in the mineral reservation clause in the deed from R. H. Harris to F. L. Harris, R. H. Harris received from Humble Oil & Refining Company the sum of $1,280.00, as one-half of the delay rental on the land described in the lease contract first above mentioned, and the sum of $2,240.00, as one-half of the delay rental on the land described in the lease contract second above mentioned. (The other one-half of such lease money, payable to Mrs. Lulu C. Harris, surviving widow of F. L. Harris, is not here involved.) S. C. Currie and E. M. Wahlenmaier claimed the lease money collected by R. H. Harris under their

contract with him of date December 22, 1941. Harris refused to recognize such claim, and Currie and Wahlenmaier brought this suit against him in the District Court of Tom Green County, Texas, to recover the same. Trial in the district court, before the court without the intervention of a jury, resulted in a judgment for R. H. Harris. This judgment was reversed by the Austin Court of Civil Appeals, and judgment rendered for Currie and Wahlenmaier for the amount sued for. 172 S. W. (2d) 404. Harris brings error.

OPINION.

It is evident that prior to the deed from R. H. Harris and wife to F. L. Harris, all the land leased to Humble Oil & Refining Company was owned by R. H. and F. L. Harris jointly, or as tenants in common. This joint ownership covered the entire estate in such land, mineral as well as surface. The deed from R. H. Harris and wife to F. L. Harris had effect to sever one-half the mineral estate from the surface estate for 15 years. During such period F. L. Harris owned all the surface estate and one-half the mineral estate, and R. H. Harris owned the other one-half of the mineral estate. Lula C. Harris had succeeded to the title and rights of F. L. Harris at the time the Humble Oil & Refining Company leases were entered into. R. H. Harris then still held the mineral interest reserved in his deed to F. L. Harris. When Lula C. Harris and R. H. Harris joined as "lessor (whether one or more)" in making the two lease contracts with Humble Oil & Refining Company, and in such lease contracts agreed that rentals should be paid to "lessor or to the credit of lessor" at a named bank, nothing else appearing, they in legal effect agreed, as between themselves, that the two named lessors, during the fifteen-year priod in which F. L. Harris rtained one-half the minerals, should own such delay rentals in equal portions. So far as this record shows, Lula C. Harris and R. H. Harris must have recognized that, as between themselves, this lease money belonged to them half and half.

From all that we have said it is evident that the part of the delay rentals here involved belonged either to R. H. Harris or to Currie and Wahlenmaier. It is also evident that such delay rentals belong to R. H. Harris unless he conveyed them to Currie and Wahlenmaier by the conveying clause in the contract between him and them of date December 22, 1941.

An examination of the statement we have made discloses that the two leases to Humble Oil & Refining Company had been

entered into at the time the contract between R. H. Harris and Currie and Wahlenmaier was made. In this connection, we note that such two leases were then duly recorded.

When we come to examine the conveying clause in the contract between R. H. Harris and Currie and Wahlenmaier, we find that it conveys "the one-half (½) interest in all oil, gas and other minerals and royalty payments reserved by R. H. Harris in his deed heretofore described to F. L. Harris." It is too well settled to admit of debate that a mere conveyance of mineral royalty will not operate to vest such royalty grantee with an interest in mineral delay rentals in an "unless" lease. It follows that if the conveying clause in the instant contract operated to convey the delay rentals here involved, it must be because it conveyed the mineral estate reserved in the deed from R. H. Harris to F. L. Harris. Stated in another way, if R. H. Harris can be said to have conveyed these delay rentals to Currie and Wahlenmaier, it must be because his conveyance of his reserved minerals, as a matter of law, operated so to do.

The opinion of the Court of Civil Appeals holds that Currie and Wahlenmaier are entitled to the delay rentals here involved because they were, and are, incident and appurtenant to the mineral title conveyed to them by R. H. Harris. In this connection, the opinion of the Court of Civil Appeals holds that: "Delay rentals are incident and appurtenant to the mineral title, and when that title has been severed from the general fee title (whether by reservation or grant), the right to thereafter accruing delay rentals is in the owner of the mineral title, and the owner of the general fee title has no interest therein." The opinion of the Court of Civil Appeals then hold that: "The grant to appellants (Currie and Wahlenmaier) vested in them, without any exception or reservation, the title to one-half interest in the minerals to the full extent of appellees interest therein, including every right appurtenant thereto." These holdings of the Court of Civil Appeals are assigned as error in this Court.

■ Before proceeding further, we deem it advisable to state certain well-settled rules of law, which we think must govern the decision of this case. Such rules are as follows:

(1) When the owner of the entire estate in land conveys it by ordinary form of deed containing no exception or reservation, his grantee acquires the same title which his grantor had, and such title includes all minerals. Hill v. Roberts, 284 S. W.

246; Bibb v. Nolan, 6 S. W. (2d) 156 (error refused); 31 Tex. Jur., p. 547.

■ (2) The owner of the entire estate in land may convey the minerals therein separately from the surface. Conversely, he may convey the surface separately from the minerals. Stated in another way: The owner has the right to sever his land into two estates, and he may dispose of the mineral estate and retain the surface, or he may dispose of the surface estate and retain the minerals. The Texas Company v. Daugherty, 107 Texas 226, 176 S. W. 717; L. R. A. 1917F, 989; Humphreys-Mexia Co. v. Gannon, 113 Texas 247, 254 S. W. 296, 29 A. L. R. 607; 31 Tex. Jur., pp. 547 and 548, and authorities there cited.

(3) A severance of the mineral estate from the remainder of the land may be effected either by the conveyance of the minerals alone or by the conveyance of the land with a reservation of the minerals. 31 Tex. Jur., pp. 549, 550, and 551, and authorities there cited.

(4) When the mineral estate in land has been severed from the balance of the land there come into existence two separate and distinct estates, each having all the incidents and attributes of an estate in land. Lemar v. Garner, 121 Texas 502, 50 S. W. (2d) 769; Munsey v. Mills & Garitty, 115 Texas 469, 283 S. W. 754; Lodwick Lumber Co. v. Taylor, 100 Texas 270, 98 S. W. 238, 123 Am. St. Rep. 803; 31 Tex. Jur., pp. 556, 557, and 558, and authorities there cited.

■ (5) The mere grant or reservation of minerals in place does not vest the grantee or reserver with any title to the surface. In spite of this, the grant or reservation of minerals carries with it, as a necessary appurtenance thereto, the right to use so much of the surface as may be necessary to enforce and enjoy the mineral estate conveyed or reserved. This is because a grant or reservation of minerals would be wholly worthless if the grantee or reserver could not enter upon the land in order to explore for and extract the minerals granted or reserved. 31 Tex. Jur., p. 559 et seq., and authorities there cited.

■ In this case, when R. H. Harris conveyed the land here involved to F. L. Harris, he severed one-half the mineral estate from the balance of the land. By such conveyance, R. H. Harris became the owner of one-half the mineral estate for 15 years. F. L. Harris became the owner of the other one-half the mineral estate and all the surface estate. The only estate R. H. Harris

reserved was the one-half mineral estate for 15 years, with the right to certain royalties thereafter, under the terms of the reservation clause in said deed already quoted. As an appurtenance to the mineral estate reserved by R. H. Harris in his deed to F. L. Harris, he, R. H. Harris, had the right to go upon this land for the purposes of exploration and development of the thing that he owned by reservation. R. H. Harris conveyed to Currie and Wahlenmaier every right, title, and interest he had in this land when he conveyed to them the entire mineral estate he reserved in his deed to F. L. Harris. When we say that R. H. Harris conveyed to Currie and Wahlenmaier every right, title, and interest he had in this land, it is evident that we say that he conveyed not only his one-half mineral estate for the balance of the 15-year period above indicated, but he conveyed his right to use the surface, which was an appurtenance to his conveyed minerals estate. Under such a record, R. H. Harris had nothing left upon which to base a claim for these delay rentals. It would be unreasonable to say that R. H. Harris can collect delay rentals on the thing he has entirely parted with, when such rentals accrued after he had divested himself of such entire title. If the owner thereof sells land already rented or leased for ordinary rental or lease purposes, the purchaser thereof would certainly be entitled to the rent or lease money accruing after his purchase. We can see no reason to apply a different rule to delay rentals provided in an "unless" mineral lease, accruing after the sale of the entire mineral title to the land involved.

It cannot be said, nor does R. H. Harris contend, that he obtained any right to these delay rentals by virtue of the terms of the joint lease contract executed by himself and Mrs. Lula C. Harris to Humble Oil & Refining Company, that he could not have obtained absent such joint contract. During the 15-year period named in the reservation clause in his deed to F. L. Harris, R. H. Harris had the same right to lease this land under the terms of the Humble Oil & Refining Company lease that Lula C. Harris had. Way v. Venus, 35 S. W. (2d) 467; Gillispie v. Blanton, 214 Ky. 49, 282 S. W. 1061; Summers' Law of Oil and Gas, pp. 468, 487, sec. 601; Id. p. 492, sec. 603. Whether under such lease contract as executed R. H. Harris has any claim to delay rentals after his 15-year reservation has expired is not before us for decision, and we express no opinion in that regard. In this connection, we note that the delay rentals here involved accrued during such 15-year period.

R. H. Harris contends that the opinion of the Commission in Caruthers v. Leonard, 254 S. W. 779, is authority for hold-

ing that Currie and Wahlenmaier, as the holders of one-half the mineral estate in this land, are not entitled to collect any part of these delay rentals. In the Caruthers case Evans, the fee owner of the land, leased it to Weir for oil, gas, and other minerals, by ordinary "unless" lease. The lease provided for delay rentals. Thereafter Evans conveyed to Leonard an undivided one-half interest in the oil, gas, and other minerals in, on, and under the land included in the lease to Weir. At a later date the land and the surface estate became the property of Caruthers, except that Leonard owned one-half the mineral estate. The "unless" lease above mentioned was then outstanding as the property of W. H. Reid. After Leonard became the owner of one-half the mineral estate, an annual installment of delay rentals accrued, and Reid paid all of same to Caruthers, who then owned all the surface estate in such land, but only owned one-half the mineral estate. Leonard sued Caruthers to recover one-half such delay rentals. The opinion of the Commission holds that under the above record Caruthers was entitled to all the delay rentals, and that Leonard was not entitled to any part thereof. As we understand the opinion of the Commission, such ruling was based on the theory that money paid on the delay rentals belonged to the surface owner, because such "money was paid for the privilege of drilling anywhere on the surface of the land." This holding was clearly erroneous, as Leonard had every right to the surface of this land necessary to enforce and enjoy his mineral title that Caruthers had for the same purpose. In our opinion, the holding above indicated, in Caruthers v. Leonard, was expressly overruled by this Court in Hager v. Stakes, 116 Texas 453, 294 S. W. 835. In that opinion Judge Greenwood points out that the opinion in Caruthers v. Leonard was not approved by this Court, but only the judgment recommended.

The judgment of the Court of Civil Appeals, which reverses the judgment of the district court and renders judgment for Currie and Wahlenmaier, is affirmed.

Opinion delivered December 15, 1943.

Rehearing overruled January 5, 1944.