## Boone, Foreman & Lackey v. Halteman & Cave Insurance Agency.

(Decided November 2, 1928.)

## Appeal from Franklin Circuit Court.

1.  Evidence.—Terms of written contract may not be contradicted or varied by parol evidence, but parol evidence is admissible to explain ambiguity where contract is uncertain in its meaning.

2.  Evidence.—Where contract for purchase of insurance agency provided that purchase price was to be determined on basis of 1¼ commission on live business, and further provided that return premiums due on cancellation of policies should be used to pay indebtedness of sellers to insurance company, and further provided that moneys paid by buyer in discharge of sellers' indebtedness to insurance company should be applied on purchase price, parol evidence was admissible to determine whether return premiums on cancellations, applied to pay indebtedness to insurance company, should be credited on purchase price.

3.  Partnership.—In action by buyer of partnership insurance agency to require sellers to credit on purchase price amount of return premiums on cancellation of policies of company, used to pay indebtedness of sellers to company as provided by contract, contract and parol evidence introduced thereunder held to support chancellor's finding that premiums so applied were not to be credited to buyer.

LESLIE W. MORRIS for appellants.

W. C. MARSHALL for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

On November 16, 1923, Palmer Utterback, F. C. Boone, Ernest Lackey and A. M. Foreman, partners doing business as the Utterback Insurance Agency, purchased the business of the Halteman & Cave Insurance Agency, a partnership composed of J. A. Halteman and E. A. Cave. The contract was in writing and is as follows:

"This contract made and entered into this 16th day of November by and between J. A. Halteman and E. A. Cave, partners, trading and doing business under the firm name and style of 'Halteman & Cave,' parties of the first part, and Palmer Utterback, F. C. Boone, Ernest Lackey and A. M. Foreman, partners, trading and doing business under the firm

name and style of 'Utterback Insurance Agency,' parties of the second part. All parties of Paducah, McCracken Co., Kentucky, witnesseth:

"Whereas Halteman & Cave are now engaged generally in the insurance business in the City of Paducah, Kentucky, and whereas they desire to sell their business and said agency to Utterback Insurance Agency, and whereas, the parties of the second part are desirous of purchasing the agency of the said Halteman & Cave.

"Now, therefore, it is agreed by and between the parties hereto as follows, to wit:

"1st. The parties of the second part are to take an invoice of all of the live business on the books of the said Halteman & Cave, to be effective as of November 1st, 1923, and this agreement is to date back and take effect as of November 1st, 1923.

"2d. The parties of the second part agree to take over all of the live business on the books of the parties of the first part.

"3d. The parties of the first part are to keep all of their book accounts and all money due them on business written by them or transacted by them up to November 1st, 1923.

"4th. The return premiums due on cancellations of Ohio Valley Fire & Marine Insurance Company policies, *written* through Halteman & Cave Agency during the month of November 1923, are to be used to pay indebtedness due said Insurance Company until said indebtedness is satisfied and the balance of the return premiums, if any, is to be transferred and credited to the Utterback Insurance Agency account.

"5th. The Utterback Insurance Agency is to assume all balances due the insurance companies now represented by the Halteman & Cave Agency for the months of July, August, September and October, 1923, and the Utterback Insurance Agency hereby agrees to make satisfactory settlement with all of said companies, with the exception of the Ohio Valley Fire & Marine Insurance Company, which balance or indebtedness owing by said Halteman & Cave shall be paid by them.

"6th. The money paid by the Utterback Insurance Agency for any indebtedness owing by Halte-

man & Cave to the insurance companies they represent, for the months of July, August, September and October shall be applied on the purchase price which the Utterback Insurance Agency has agreed to pay to Halteman & Cave, and which is hereinafter set out, and whatever balance is owing Halteman & Cave on the purchase price, the Utterback Insurance Agency, for said balance, hereby agrees to immediately execute a negotiable note to the Citizens Savings Bank of Paducah, Kentucky, which note is to be applied on any indebtedness owing the Citizens Savings Bank by the said Halteman & Cave.

"7th. The purchase price of said Agency is to be determined on the basis of one and one-quarter commission on all live business on the books in force of the Halteman & Cave Agency."

Palmer Utterback subsequently transferred his interest in the Utterback agency to the other members of the firm, and these members of the firm then formed a corporation to be known as Boone, Foreman & Lackey, Inc. Halteman & Cave were indebted to the various insurance companies represented by them, including the Ohio Valley Fire & Marine Insurance Company, for premium balances. On November 13, 1923, the Ohio Valley Fire & Marine Insurance Company was placed in the hands of a receiver. At that time Halteman & Cave's indebtedness to it amounted to the sum of $2,516.22, consisting of an open account for premiums collected by the agency during the months of July, August, September and October and not paid to the company, amounting to $1,116.22; one note for $1,000 dated October 10, 1923, and due January 10, 1924; and one note for $400 dated May 5, 1923, and due six months after date. The return premiums due Halteman & Cave on cancellations made in their name amounted to $2,389.69, leaving $1,273.47 due them on the premium account; the return premiums referred to being the amount of unearned premiums on policies canceled through Halteman & Cave and due to be returned to the policyholders of the company.

Halteman & Cave settled with the receiver of the Ohio Valley Fire & Marine Insurance Company by paying to him the sum of $126.53, being the difference between the return premiums and the amount owing to the company by Halteman & Cave which included the open account of $1,116.22 and the two notes for $1,000 and $400, respectively. The receiver thus construed the con-

tract between appellants and appellees to mean that appellees were entitled to credit for the return premiums by reason of the insolvency of the issuing company. When appellants learned of this settlement, they brought this action in the Franklin circuit court against the receiver and Halteman & Cave to recover $1,273.47, on the ground that the settlement made by the receiver with Halteman & Cave was erroneous and that they were entitled to the return premiums by reason of their purchase of the Halteman & Cave Agency.

Halteman & Cave filed an answer and counterclaim, in which they set up the written contract and alleged that by the fourth clause thereof they were entitled to use all return premiums due on cancellations of the Ohio Valley Fire & Marine Insurance Company policies to pay their indebtedness to the company until that indebtedness was fully satisfied. They further alleged that the purchase price of the agency agreed to be paid by the plaintiffs was to be determined on the basis of 1¼ commission on all live business on the books of the Halteman & Cave Agency as of November 1, 1923, and, calculated on that basis, the price agreed to be paid by plaintiffs was $11,-764.87, and that only $10,887.49 had been paid, leaving a balance of $877.38, for which they asked judgment. They further alleged that by mutual mistake of the parties and oversight on the part of the draughtsman of the contract dated November 16, 1923, the word "written" was used in the fourth clause thereof instead of the word "canceled," and they asked that the contract be reformed by substituting the word "canceled" for the word "written." In the course of the trial it was conceded by appellants that the word "canceled" should have been used in the fourth clause of the contract instead of the word "written," and the contract was reformed in this respect without objection.

A large amount of testimony was taken, most of it orally before the court, with reference to the meaning of the contract, and particularly paragraphs 4, 5, and 7, as understood by the parties thereto at the time it was made. A judgment was entered dismissing the plaintiffs' petition and giving judgment for the defendants for $877.38 on their counterclaim. In a written opinion the chancellor said, in part:

"The Halteman & Cave Agency was indebted to Ohio Valley for open account $877.39 and for two

notes, one for $1,000 and one for $400, amounting to something like $2,300 at the time of the purchase of Halteman & Cave Agency by Boone, Foreman & Lackey.

"A written contract was executed defining the terms of the trade whereby Boone, Foreman & Lackey bought the Halteman & Cave Agency.

"Oral testimony was heard by the court on all points of the written contract wherein it was contended by either party that the written contract needed the aid of oral testimony to make clear to the court what was intended by the terms of the writing.

"Unhappily the parties do not agree, except upon one correction, and that is in section 4 where the phrase 'written through Halteman & Cave Agency during the month of November, 1923,' appeared. Both sides agree that that phrase should be instead of as above, 'rewritten or cancelled during the month of November, 1923.' As suggested, the parties, Boone, Foreman & Lackey represented by Mr. Boone and Mr. Lackey, who testified, and the Halteman & Cave Agency by Mr. Halteman and Mr. Cave, who testified, furnished a state of equipoise so far as the strength and value of the oral testimony was concerned, except to the extent that Roscoe Reed, a lawyer of Paducah, Kentucky, seemed to corroborate Halteman & Cave on disputed points. The return premiums in dispute were all on policies cancelled as of date November 13, 1923. The reason why policies should have been and were cancelled of that date is apparent, since otherwise the policyholder would be without protection as the Ohio Valley at that date went into the hands of a Receiver. In addition to this, it was shown by Roscoe Reed's testimony, that the cancellations thus made necessary, were to be made as of November, 1923, and that both parties agreed to this date. Roscoe Reed was the lawyer who drew the contract, and so far as any implied bias, there was no basis for it, since he had been the lawyer for both parties theretofore, and was the agreed choice of both parties, to draw the contract now in dispute. Mr Reed further testified that it was understood and agreed by both parties that the Halteman & Cave partnership was to have the return premiums to be applied to their indebtedness to Ohio Valley.

"The terms of the written contract may be said to need oral explanation in this. Section 7 says 'The purchase price of said agency is to be determined on the basis of one and one-quarter commission on all live business on the books and in force of the Halteman & Cave Agency.' If this provision is by itself to control the price, then, as between Halteman & Cave on the one side, and Boone, Foreman & Lackey, on the other, the latter would be right. But section 4 is as follows: 'The return premiums on cancellations of Ohio Valley Fire & Marine Insurance Co. policies, rewritten through Halteman & Cave Agency during the month of November, 1923, are to be used to pay indebtedness due said Insurance Company until said indebtedness is satisfied, and the balance of the return premiums, if any, is to be transferred to the Utterback Insurance Agency account.' (The Utterback Agency is Boone, Foreman & Lackey.) Section 5 is as follows: 'The Utterback Insurance Agency is to assume all balances due the insurance companies now represented by the Halteman & Cave Agency, for the months of July, August, September and October 1923, and the Utterback Insurance Agency agrees to make satisfactory settlement with all of said companies with the exception of the Ohio Valley Fire & Marine Insurance Company which balance or indebtedness owing by said Halteman & Cave shall be paid by them.' It is noticeable that the amount of the indebtedness of Halteman & Cave to Ohio Valley is not specified, merely a blanket statement that these premiums due on Ohio Valley business shall be used (interpolating, by Halteman & Cave, in whose agency name all were cancelled as of November 13, 1923), to pay indebtedness due said insurance company (Ohio Valley until said indebtedness is satisfied, and the balance of the return premiums if any is to be transferred and credited to the Utterback Insurance Agency (Boone, Foreman & Lackey) account. Both parties agree that at the time of the contract, neither of them considered a premium on cancellation due from Ohio Valley very valuable, except that Halteman & Cave, who owed Ohio Valley, could take these premiums and 'butt them off' against their indebtedness to Ohio Valley, dollar for dollar.

"Boone, Foreman & Lackey say that in the discussion relative to the indebtedness that Halteman & Cave stated it as $877.38 and made no disclosures of the note indebtedness. This is denied by Halteman & Cave, who say that they stated their indebtedness to be approximately $2,500.00.

"Whilst section 7 says that the basis of sale was one and one-quarter commission on the live business, the contract likewise says (sec. 4) that Halteman & Cave were to have the return premiums on cancelled policies to pay their indebtednes. Halteman & Cave say in addition or as a bonus, which is supported by Roscoe Reed, but denied by Boone, Foreman & Lackey. Further color is given to Halteman & Cave's contention in this behalf, by the provisions of Sec. 5, whereby Halteman & Cave were to pay Ohio Valley, and Sec. 4 shows out of what fund it was to be paid.

"It appears that after Halteman & Cave went out of business themselves they went to work for Boone, Foreman & Lackey; that whilst they were thus engaged Boone, Foreman & Lackey had their book-keeper to make up a statement of account between them showing in detail the debit and credit items, and in said account was a debit item of $877.38 for return premiums on cancellation which had been appropriated to pay Halteman & Cave open account with Ohio Valley. Accompanying this statement was a check of $97, and odd cents which Halteman & Cave accepted. However, a short time thereafter Cave appeared to Boone, Foreman & Lackey, and challenged the correctness of the account which contained the charge of $877.38, and demanded that amount upon his contention that it was part of the contract that Halteman & Cave were to have these premiums to pay their indebtedness to Ohio Valley, and that they should not be charged to them.

"A final interpretation of the contract as written, would seem to sustain Halteman & Cave's contention which is in a measure sustained by Roscoe Reed who drew the contract."

The major portion of the brief of counsel for appellants is devoted to a discussion of the law applicable to the reformation of contracts upon the ground of mutual mistake, and numerous cases are cited holding that evidence to authorize the reformation of a contract

upon the ground of mutual mistake must be so clear and satisfactory as to make the mistake appear beyond reasonable controversy. The authorities cited announce a well-known rule long and consistently adhered to by this court; but as we read the record the evidence introduced was not for the purpose of reforming a contract, but was for the purpose of enabling the court to ascertain the real intentions of the parties to a contract which is ambiguous on its face.

The terms of a written contract may not be contradicted or varied by parol evidence, but where it is uncertain in its meaning any ambiguity therein may be explained by parol evidence. Westinghouse Electic & Manufacturing Co. v. Greenville Coal Co., 169 Ky. 280, 183 S. W. 901. Ernest Lackey, one of the appellants, testified that paragraph 4 of the contract was written substantially as suggested by him, and admitted that the contract was susceptible of the interpretation placed thereon by appellees and by the chancellor; but both he and Boone testified positively that it was the intention of the parties to limit the consideration to be paid to Halteman & Cave to 1¼ commission of the live business on their books as of November 1, 1923, and that all return premiums due on cancellations of the Ohio Valley Fire & Marine Insurance Company policies belonged to appellants. They further testified that the provision in the contract for the cancellation of these policies through Halteman & Cave was intended for the benefit of appellants and to enable them to set up the return premiums against the indebtedness of Halteman & Cave to the insurance company assumed by appellants and to be applied on the purchase price.

Halteman and Cave testified with equal positiveness that they were to use these return premiums to liquidate their indebtedness to the Ohio Valley Fire & Marine Insurance Company, and this consideration was in addition to the 1¼ commission on all live business on their books which, of cource, included the policies that had been issued through them by the Ohio Valley Fire & Marine Insurance Company. They are supported by the attorney who prepared the contract, and also by the phraseology of the contract itself.

Appellants also contend that appellees failed to disclose to them during the negotiations for the sale of the Halteman & Cave Agency the existence of the two

notes for $1,000 and $400, respectively, executed by Halteman & Cave to the Ohio Valley Fire & Marine Insurance Company, and that the only indebtedness to that company disclosed by appellees and assumed by appellants was an open account of $877.39, and Lackey and Boone so testified. On the other hand, Halteman & Cave testified that they disclosed to appellants all of their indebtedness to the Ohio Valley Company and informed them it amounted to approximately $2,500.

In view of the wording of the contract, it was proper for the court to permit the introduction of parol evidence to ascertain the real intention of the parties, and we cannot say the finding of the chancellor is not supported by the preponderance of the evidence. This being true, the judgment cannot be disturbed.

Judgment affirmed.