## Blevins et al. v. Riedling.

Jan. 30, 1942.

336

Joseph M. Hayse for appellant.

Lawrence S. Grauman for appellee.

OPINION OF THE COURT BY SIMS, COMMISSIONER—Affirming.

The appellee, Edward M. Riedling, doing business as the Riedling Lumber Company, brought this foreclosure suit against Alfred Blevins and wife, Leona, on a $1,500 note secured by a second mortgage on two pieces of real estate located on Young Avenue and on Hancock Street in Louisville. The defense was that the note had been satisfied by a writing the parties had previously signed on Dec. 5, 1939. Upon proof heard in the form of depositions, the chancellor entered a judgment in favor of plaintiff, and defendants appeal.

Riedling is engaged in the retail lumber business in Louisville and Blevins is a building contractor in that city. Some building supplies were furnished Blevins by Riedling which were used on property in no way connected with this controversy. To secure the payment thereof Blevins and wife on Sept. 10, 1938, executed to Riedling a $1,500 note secured by a second mortgage on the two pieces of property referred to above, which properties are not affected by the special partnership to which mention is about to be made.

Blevins owned three lots on East Park Avenue in Louisville, numbers 113, 115 and 120. In July, 1939, he entered into an oral agreement with Riedling whereby they were to improve this property by building two houses thereon and remodeling a third. Riedling was to furnish the building material; Blevins was to look after the work and receive customary wages; and upon completion the properties were to be sold and after accounts for materials were satisfied, the profits were to be divided. The venture did not prove a success. The house at number 113 was sold to Riedling's son and passed out of the picture. On Nov. 29, 1939, Blevins submitted in

writing a proposition to Riedling whereby he proposed to convey to the latter the properties numbers 115 and 120 in consideration of Riedling satisfying the mortgage liens against same, together with certain material and labor accounts and releasing Blevins from a $50 personal account. Near the end of this writing these words appear: "I am to be relieved of all liabilities above."

Riedling immediately accepted the proposition by signing the writing and started to draw up a contract in accordance with its terms. However, Blevins desired to have the contract drafted by his attorney, which was done. After the contract was written it was submitted to Riedling's attorney, who in the presence of Blevins made some slight changes in the instrument and telephoned Blevin's attorney relative thereto.

The formal contract was signed by Blevins and wife and by Riedling on Dec. 5, 1939, and is headed "Dissolution of Partnership." The preamble recites that Riedling and Blevins entered into a special partnership for the erection of these houses, following which is the agreement of Blevins and wife to convey properties numbers 115 and 120 to Riedling in consideration of his assumption of the liens and bills against these properties and releasing the Blevins from all liability therefor. In paragraph two the Blevins expressly released Riedling from all charges and liens on these properties as well as "all charges of whatever nature against him (Riedling)." Paragraph three reads:

> "The said Edward M. Riedling hereby releases the said Alfred Blevins and Leona Blevins, his wife, from any and all charges of whatever nature against them."

The concluding paragraph of the dissolution contract reads:

> "Now, therefore, in consideration of the premises, it is mutually agreed and understood by and between the parties hereto for and on account of the above considerations, and other good and valuable considerations hereby acknowledged by the respective parties, that all indebtedness of each party against the other is hereby paid, satisfied and cancelled, and that the special partnership and any partnership agreements and arrangements by and be-

tween the parties hereto is hereby dissolved as of this date.''

It is insisted by counsel for appellants that in plain terms the contract releases them ''from any and all charges against them''; that as there is no ambiguity in the contract, parol evidence under the cases of Falls City Machinery & Wrecking Co. v. Walter, 224 Ky. 726, 6 S. W. (2d) 1053, and Dawson v. Dawson, 226 Ky. 750, 11 S. W. (2d) 933, is not admissible to establish its meaning. An examination of these authorities reveals that the agreements there under consideration were couched in such language as to leave no doubt as to the intention of the parties and the court held extrinsic evidence was not admissible. While parol evidence may not be admitted to vary or contradict a written contract, but where ambiguous or uncertain terms are used, such evidence may be heard to the end that their true meaning may be ascertained by the court. Boone, Foreman & Lackey v. Halteman & Cave Ins. Agency, 226 Ky. 839, 11 S. W. (2d) 973; Bullock v. Young, 252 Ky. 640, 67 S. W. (2d) 941. The contract deals with the dissolution of this special partnership, yet the excerpts above quoted from it recite the Blevins are released from all indebtedness. A contract is ambiguous when its language is reasonably susceptible of different constructions. 17 C. J. S., Contracts, Section 294, p. 685; Virginia Iron, Coal & Coke Co. v. Combs, 165 Ky. 456, 177 S. W. 238. Although this contract related solely to the dissolution of the special partnership, yet in a separately numbered and distinct paragraph, number three, it released Blevins and wife from all charges of whatever nature. Under the Boone and Bullock cases, supra, there is sufficient ambiguity in the contract to sustain the ruling of the chancellor in allowing the introduction of parol evidence to show from just what indebtedness the parties intended the Blevins should be released.

Appellees' attorney, Mr. Grauman, testified that when he was going over the dissolution contract with Blevins, the latter said it was relative to the building of the houses on Park Avenue and made no mention that the contract related to anything except matters growing out of the construction of these houses. The testimony of Riedling is to the effect that the $1,500 mortgage had no connection with the joint business venture between Blevins and him. He further testified that on Dec. 22,

just a little more than two weeks after the contract was signed, Blevins presented him with a bill for $111.17 for labor on a Meadow Avenue house, which likewise was not involved in the joint venture. He insisted upon Blevins allowing him to apply $90 of this bill on the payment of a year's interest on the $1,500 mortgage, which Blevins did after some little argument; that he gave Blevins a check for $21.17, the balance of this account. B. M. Stickler, an employee of Riedling, and L. R. Riedling, a son of appellant, were both in the office of the lumber company when Blevins presented this bill and both of these men corroborate appellant. L. R. Riedling testified that he wrote the $21.17 check.

Blevins denied the $90 was paid Riedling as interest on the mortgage, but said that sum was deducted from his bill because the dissolution contract settled all debts between them. He explains the check of $21.17 given him on that occasion as representing wages going to his helper. The chancellor accepted the testimony of Riedling and we are not inclined to disagree with him since it was corroborated and seems to us more plausible than Blevins' version of this transaction.

Blevins also relies upon a paper Riedling wrote on Dec. 5th, the day the dissolution contract was signed, to the effect he had sold Blevins merchandise for a period of two years and all his accounts had been settled in full. This so-called letter was addressed to no one and sheds but little light on this controversy. Evidently, it had reference to merchandise accounts and did not relate to the mortgage, and was perhaps to be used by Blevins in obtaining credits from other materialmen.

It is argued by appellees that as Mrs. Blevins had no connection with the business between her husband and Riedling the fact that she signed the dissolution contract is convincing the release contained therein had reference to the mortgage as well as to the Park Avenue houses, otherwise, there was no reason for her to sign same. But the contract contained an agreement by Blevins to convey the Park Avenue houses to Riedling and as the title was in Blevins, it was necessary for his wife to sign the contract in order to bind her on the agreement to convey.

We cannot accept appellants' argument that unless the $1,500 mortgage was satisfied there was no considera-

tion supporting their agreement to make a conveyance to Riedling. On the two pieces of property the Blevins agreed to convey there were mortgage liens aggregating $3,400, not to mention accounts for materials going into the improvements for which the suppliers might have filed liens and even might have asserted personal liability against Blevins. Riedling's assumption of the mortgage, also of the bills for materials, accompanied by his agreement that the Blevins should be released from all liability on account thereof, certainly constituted a consideration supporting Mrs. Blevins' agreement to join her husband in a conveyance of these two properties.

The chancellor found that the dissolution contract did not affect the $1,500 mortgage and perceiving no error in the judgment entered, the same is affirmed.