## Roberts v. Roberts' Ex'r et al.

Jan. 23, 1945.

·Claude E. Smith and George S. Clay for appellant.

J. D. Ruark for appellees.

OPINION OF THE COURT BY JUDGE HARRIS—Affirming.

Following her husband's death the appellant instituted the present action, claiming therein that by reason of the following antenuptial contract she is entitled to be paid out of the assets of his estate $500 a year so long as she lives:

"This antenuptial contract and agreement is made this the 1st day of February, 1929 by and between Harry A. Roberts of Waverly, Union County, Kentucky, party of the first part and Miss Lena O'Daniel of Evansville, Vanderburgh County, Indiana, party of the second part, and is to Witness:

"That, Whereas, the parties hereto above mentioned are contemplating marriage of *each* other and being desirous of settling all of their property rights before such marriage and for the further purpose of determining the disposition of the estate of either upon the death of either and to set out what property is to be received by the wife in case she survives the husband, they

have now reached this agreement and do now stipulate below the respective rights of each unaffected by any law now existing in the State of Kentucky where they contemplate living or of any other state in which they may at any time during their married life live, and this agreement fully determines and fixes the property rights of both of the contracting parties hereto.

"It is agreed and understood that the party of the first part, Harry A. Roberts, shall not have during the married life of the parties hereto or after the death of the second party, Miss Lena O'Daniel, any claim of any kind or character upon any property that she may now own or hereafter acquire and the said Miss Lena O'Daniel may own, sell, and dispose of by will or upon her death her property may pass by descent to her heirs free of any right of the said Harry A. Roberts to any interest of any kind or character in her said property, he by this contract waiving all rights of inheritance or interest in her property under the law, not only during her life but in event of her death before the death of said Harry A. Roberts.

"The said Harry A. Roberts agrees and binds himself upon their marriage to pay to Miss Lena O'Daniel then to be his wife Five Hundred Dollars ($500.00) per year so long as she may live which is to be used by her in buying her clothing, and in any way she may desire, said amount being for her personal expense and any other use of the residue that she may see fit to make, but this payment of Five Hundred Dollars ($500.00) per year is to be only made during their married life and upon her death said payments shall cease and her heirs are to have no claim for any part of said payment not due as contemplated above.

"The said Harry A. Roberts further agrees in case his wife survives him that at his death there shall be paid to her the entire proceeds of his three (3) policies of insurance of Five Thousand Dollars ($5,000.00) each in the New York Life Insurance Company to be her property in fee simple to do with and own as she pleases, and he further agrees at his death, that she shall occupy and use during her life or as long as she remains his widow the seventy (70) acre farm now owned by the said Harry A. Roberts and known as the Tom Trigg farm and she is to have the right during her life or widowhood to take such posts as may be necessary out

of the hedge fence between this farm and other lands owned by said Harry A. Roberts, to do such fencing as she may need on said seventy (70) acres Trigg farm, and the said Harry A. Roberts agrees that should he before or during their married life by the Will Trigg farm adjoining the above of about seventy (70) acres that the said Miss Lena O'Daniel shall hold that tract during her life or while she remains his widow under the same conditions as outlined for the Tom Trigg tract above mentioned.

"Should the said first party, Harry A. Roberts, never acquire said Will Trigg farm and not own same at the time of his death, then his heirs may purchase said Will Trigg tract for the use of the second party, Miss Lena O'Daniel, during her life or widowhood as outlined above and if said purchase is not made in one years time after his death then in lieu of the Will Trigg farm, the estate or the heirs of said Harry A. Roberts shall pay to the second party, Miss Lena O'Daniel, the sum of Three Thousand Dollars, ($3,000.00) and in that event she should only enjoy the use of the Tom Trigg farm during her life or widowhood and the Three Thousand Dollars ($3,000.00) would be hers in fee simple.

"The said Lena O'Daniel in consideration of the above accepts same in lieu of all rights she might have under the law as the wife of said Harry A. Roberts and surrenders all interest in all other estate, real, personal or mixed, now owned by the said Harry A. Roberts, or that he may hereafter acquire, and he is to own and control to sell and convey, any and all of his property freely without any interest whatever of the said Lena O'Daniel in same, being understood that should she after their marriage die before the said Harry A. Roberts then her heirs are to have no part under this contract, save and except any amount that might yet be due her of the Five Hundred Dollars ($500.00) yearly payment agreed to be made and she is to receive none of this property from the said Harry A. Roberts or his estate unless she outlives the said Harry A. Roberts and that she be the lawful wife of said Harry A. Roberts and at the time of his death.

"At the time of the death of the said Lena O'Daniel or when she should marry again, then the land herein given to her for her life or widowhood shall pass to the heirs of said Harry A. Roberts.

"This contract is made to determine their property

rights and setting aside any law that now exists or may hereafter exist as to the right of a husband or wife in the property of the other, and she is to receive on the death of Harry A. Roberts only the property set out herein.''

With appellees' general demurrer still pending, the following order was entered: ''This cause coming on for hearing by agreement of the parties on the question of the construction of the marriage contract filed as an exhibit, and the court being advised, finds and adjudges that the $500.00 payment was to be made only during the life of both Lena Roberts and Harry Roberts, and therefore there is nothing due her on her claim which she has asserted in this action for any money due her after the death of said Harry Roberts, to which the plaintiff by attorney, objects and excepts.''

Being dissatisfied with that order, the appellant filed what she termed a motion and grounds for a new trial; stating therein that the contract is ambiguous and that she should be able to introduce evidence to show that it was the intention of herself and Mr. Roberts that she should be paid $500 a year so long as she lived, and that she was not advised that the action was to be tried on the question of an interpretation of the contract. In support of her position she took many depositions.

Entertaining the notion that parol testimony was not admissible to explain the terms or the meaning of the contract and that, therefore, appellant's depositions were not competent, the court entered this order: ''This cause coming on for hearing on the plaintiff's motion for new trial and the Court being sufficiently advised from the pleadings, statement of counsel, and from the whole case, it is ordered and adjudged that plaintiff's motion for new trial is overruled, to which ruling of the Court the plaintiff excepts and prays an appeal to the Court of Appeals, which is granted.''

On this appeal the appellant contends: (1) that the contract provides with reasonable clarity for the payment of $500 a year so long as she lives; (2) that if the contract does not so show, then it is ambiguous and her parol testimony should be received.

Originally ambiguities were classified as ''latent'' and ''patent''—a latent one being an uncertainty which does not appear on the face of the instrument, but which

is shown to exist for the first time by matter outside the writing; a patent one being an uncertainty which appears on the face of the instrument. In those jurisdictions in which such a distinction is still recognized, parol evidence is admissible to explain the former, but not the latter. Am Jur., Vol. 20, pages 1009 and 1010. In Kentucky the classification and the rules of evidence with respect thereto still prevail. See Texas Company v. Bowen et al., 292 Ky. 676, 167 S. W. 2d 822, 823, wherein we said: "While parol evidence may not be admitted to vary or contradict a written contract, yet where ambiguous or uncertain terms are used such evidence may be heard to the end that their true meaning may be ascertained by the court. Boone, Foreman & Lackey v. Halteman & Cave Ins. Agency, 226 Ky. 839, 11 S. W. 2d 973; Bullock v. Young, 252 Ky. 640, 67 S. W. 2d 941; Blevins v. Riedling, 289 Ky. 335, 158 S. W. 2d 646. But where the ambiguity is patent or appears on the face of the instrument, the prevailing view is that parol evidence is not admissible to explain such ambiguity. 10 R. C. L. 1068, sec. 263; Day v. Asher, 141 Ky. 468, 132 S. W. 1035; Kentucky Coal Lands Co. v. Smith, 149 Ky. 794, 149 S. W. 979. Also see annotations in 6 L. R. A., N. S., 954. * * *"

Applying the above rules and principles, we are of the opinion that the chancellor was not in error in excluding appellant's parol evidence, or in placing upon the contract the construction which he did. And appellant's complaint that the chancellor should not have construed the contract at the time and under the circumstances that he did, is not well made. Not only did the very nature of her petition necessitate and invite a construction of the contract by the chancellor, the order recited above shows that she consented thereto.

Judgment affirmed.