**KENTUCKY SPIRIT HEALTH PLAN, INC., Appellant/Cross–Appellee**

**v.**

**COMMONWEALTH of Kentucky, FINANCE AND ADMINISTRATION CABINET; Lori Flannery, in Her Official Capacity as Secretary of the Finance and Administration Cabinet; Commonwealth of Kentucky, Cabinet for Health and Family Services; Au-**

drey Haynes, in Her Official Capacity as Secretary of the Cabinet for Health and Family Services; and Commonwealth of Kentucky, Department of Medicaid Services, Appellees/Cross–Appellants

and

Commonwealth of Kentucky, Finance and Administration Cabinet; Lori Flannery, in Her Official Capacity as Secretary of the Finance and Administration Cabinet; Commonwealth of Kentucky, Cabinet for Health and Family Services; Audrey Haynes, in Her Official Capacity as Secretary of the Cabinet for Health and Family Services; Commonwealth of Kentucky, Department of Medicaid Services; and Lawrence Kissner, in His Official Capacity as Commissioner of the Department of Medicaid Services, Appellees/Cross–Appellants

v.

Kentucky Spirit Health Plan, Inc., Appellant/Cross–Appellee

Nos. 2013–CA–001003–MR, 2013–CA–001081–MR

Court of Appeals of Kentucky.

RENDERED: MAY 15, 2015; 10:00 A.M.

BRIEF FOR APPELLANT/CROSS–APPELLEE: Bethany A. Breetz, Philip Collier, Louisville, Kentucky, Christopher Flynn, Tracy A. Roman, Washington, D.C.

ORAL ARGUMENT FOR APPELLANT/CROSS–APPELLEE: Philip Collier, Louisville, Kentucky.

BRIEF FOR APPELLEES/CROSS–APPELLANTS: Richard M. Sullivan, Kenneth A. Bohnert, Bradley R. Palmer, Louisville, Kentucky.

ORAL ARGUMENT FOR APPELLEES/CROSS–APPELLANTS: Kenneth A. Bohnert, Louisville, Kentucky.

BEFORE: COMBS, JONES, AND MAZE, JUDGES.

### OPINION

MAZE, JUDGE:

Kentucky Spirit Health Plan, Inc., (hereinafter "Kentucky Spirit") appeals from a decision of the Franklin Circuit Court granting summary judgment in favor of

the numerous appellees in this case (collectively "the Commonwealth"). Specifically, Kentucky Spirit argues that the circuit court erroneously interpreted the terms of its Medicaid Managed Care Contract (hereinafter "the Contract") with the Commonwealth, pursuant to which Kentucky Spirit provided various Medicaid-eligible services. The Commonwealth appeals the circuit court's use of a non-deferential standard of review in addressing the decision of the Finance and Administration Cabinet's (FAC) Secretary.

We conclude that the Contract required Kentucky Spirit to cover the contested services, though we do so for reasons other than those in the circuit court's order. Hence, we affirm summary judgment for the Commonwealth. We further affirm the circuit court's chosen standard of review.

### Background

The underlying facts of this case are neither disputed nor complex. Beginning in November 2011, Kentucky Spirit, a Missouri-based corporation and Managed Care Organization (MCO), facilitated Kentucky's Medicaid program pursuant to the Contract [1] as well as various state and federal Medicaid statutes and regulations. [2] One of the many services Kentucky Spirit was charged with providing was "preventative health services." Prior to 2011, approved medical professionals in the 104 subject Kentucky counties performed these and other services and billed the Department of Medicaid Services (DMS) directly as part of a "fee-for-service" system. Under this system, DMS also reimbursed local health departments for eligible services performed by healthcare professionals employed with local health departments, including school-based clinics staffed by registered nurses.

Under the new "managed care" scheme adopted in 2011, Kentucky Spirit became one of three providers of Medicaid with which the Commonwealth contracted to provide services to eligible Kentuckians. For these services, and in the place of the past fee-for-service arrangement, the Commonwealth paid Kentucky Spirit a monthly fee based upon the number of enrolled members. In 2012, after reviewing claims it had received from the Commonwealth, Kentucky Spirit determined that claims for services performed by health department registered nurses and licensed practical nurses at school clinics were "outside the scope of the Contract and therefore not eligible for payment...." Kentucky Spirit contended that the costs of these services were the responsibility of the Education Cabinet.

Pursuant to the Contract, Kentucky Spirit filed a reimbursement dispute with the Cabinet for Health and Family Services (CHFS) and later appealed to the FAC. The CHFS Secretary determined that the Contract required Kentucky Spirit to pay the disputed claims. However, she agreed with Kentucky Spirit that services provided by licensed practical nurses were not compensable under the Contract. The FAC Secretary affirmed CHFS's decision.

---

1. In 2013, Kentucky Spirit announced its intention to withdraw from its duties under the Contract. Litigation ensued, and in an unpublished opinion rendered on February 6, 2015, this Court affirmed the Franklin Circuit Court's conclusion that this constituted breach of the Contract. *See Kentucky Spirit Health Plan, Inc. v. Finance and Administration Cabinet*, 2015 WL 510852 (Ky. App. 2015)(2013–CA–001050–MR and 2013–CA–001201–MR).

2. One such authority is the "Kentucky State Plan Under Title XIX of the Social Security Act Medical Assistance Program" (hereinafter referred to as the "State Plan").

On January 25, 2013, Kentucky Spirit filed suit in Franklin Circuit Court seeking declaratory and injunctive relief against the decision of the FAC Secretary pursuant to KRS[3] 45A.245. Kentucky Spirit sought and received expedited handling of its action. The circuit court held oral arguments on the merits of the case; and after both parties filed motions' for summary judgment and fully briefed the issue, the circuit court entered an Opinion and Order.

In its decision, the circuit court agreed with the Commonwealth that Kentucky Spirit was obligated under the Contract to provide the same level of coverage previously provided under the fee-for-service arrangement. The court further held that Kentucky Spirit could not disregard what the court deemed was a "longstanding interpretation of Medicaid eligibility" for school-based medical services performed by local public health departments. Employing the doctrines of contemporaneous construction and comity, as well as the legislative intent behind Kentucky's Medicaid-related statutes, the circuit court granted the Commonwealth's motion for summary judgment and denied Kentucky Spirit's motion for the same. Kentucky Spirit now appeals from the circuit court's decision; and the Commonwealth cross-appeals on the sole basis of the circuit court's chosen standard of review.

### Standard of Review

■ While it is rare for this Court to address and dispose of a contested issue while merely stating the appropriate standard of review, the unique facts and arguments in this case prove it to be possible. On cross-appeal, the Commonwealth argues that the circuit court erred in failing to show appropriate deference to the FAC Secretary's ruling. More specifically, it contends that the circuit court was required, but failed, to conduct judicial review of the decision of the FAC Secretary "under the auspices of KRS 13B.150 and the standards of common administrative law." Furthermore, the Commonwealth urges that we must do the same. We have observed this argument, or some variation of it, in several recent cases involving the Commonwealth; and we once again disagree.

We decline to apply KRS 13B. Above all, we cite to the fact that the parties agreed in Section 40.9 of the Contact that disputes between them would be resolved pursuant to KRS 45A, not KRS 13B. The Commonwealth is bound by this provision and may not now choose another remedy.

In further support of a proposed deferential standard of review, the Commonwealth cites to KRS 45A.280, part of Kentucky's Model Procurement Code, which states,

[t]he decision of any official, board, agent, or other person appointed by the Commonwealth concerning any controversy arising under, or in connection with, the solicitation or award of a contract, shall be entitled to a presumption of correctness and shall not be disturbed unless the decision was procured by fraud or the findings of fact by such official, board, agent or other person do not support the decision.

Kentucky Spirit's action sought declaratory and injunctive relief concerning the terms of its contract with the Commonwealth. In effect, Kentucky Spirit sought enforcement of the Contract. Hence, we conclude that the more specific and more applicable provision of the Model Procurement Code is KRS 45A.245(1). It states, in pertinent part,

---

**3.** Kentucky Revised Statutes.

Any person, firm or corporation, having a lawfully authorized written contract with the Commonwealth at the time of or after June 21, 1974, may bring an action against the Commonwealth on the contract, including but not limited to actions either for breach of contracts or for enforcement of contracts or for both. Any such action shall be brought in the Franklin Circuit Court and shall be tried by the court sitting without a jury.

Applying the language of KRS 45A.245(1), Kentucky Spirit's action in the circuit court was an original action concerning the interpretation and enforcement of the terms of a contract. Thus, the circuit court was correct to apply a *de novo* standard of review; and we shall do the same. *See Hazard Coal Corp. v. Knight*, 325 S.W.3d 290, 298 (Ky. 2010), quoting *First Commonwealth Bank of Prestonburg v. West*, 55 S.W.3d 829, 835 (Ky. App. 2000).

### Analysis

■■■ The remaining issues in this case concern the interpretation of a contract. Thus, we must remember the well-established rule that, where a contract's terms are plain, a court must assign them their ordinary meaning and enforce the contract as written. *See Bryan v. Massey–Ferguson, Inc.*, 413 S.W.2d 891, 893 (Ky. 1966). If no ambiguity exists, a court may not resort to extrinsic or parol evidence concerning the parties' intentions. *Frear v. P.T.A. Industries, Inc.*, 103 S.W.3d 99, 106 (Ky. 2003), citing *Teague v. Reid*, 340 S.W.2d 235 (Ky. 1960). We must first determine whether an ambiguity existed in the Contract, as this will dictate the course of our analysis. In doing so, we ask whether the contract provisions in question were "susceptible to inconsistent interpretations." *Frear*, 103 S.W.3d at 106 n. 12, citing *Transport Ins. Co. v. Ford*, 886 S.W.2d 901, 905 (Ky. App. 1994). More specifically, we must determine if those provisions in the Contract concerning Kentucky Spirit's alleged obligation to provide coverage for school-based health services performed by local health department registered nurses were subject to more than one reasonable interpretation. We answer that question in the negative.

In ruling for the Commonwealth, the circuit court never expressly held these provisions to be ambiguous; however, it employed several rules of contractual construction. Kentucky Spirit argues the circuit court was not permitted to do so because the terms of the Contract were unambiguous. Kentucky Spirit first points out that while the Contract required that it provide preventative health services "pursuant to 907 KAR[⁴] 1:360[,]" that regulation does not provide for *where* these services are to be performed. We are not convinced the location of the services is relevant given other terms in the Contract and the controlling regulations; however, even following Kentucky Spirit's guidance into other areas of Kentucky's Medicaid-related regulations, its argument fails.

Kentucky Spirit cites 907 KAR 1:715 Section 1(30) [5] as dictating where preventative health services can be performed.

---

4. Kentucky Administrative Regulations.

5. This specific provision. defines a "School-based health services," as referenced in the regulation, as
    medically-necessary health services:
    (a) Provided for in 907 KAR 1:034 [since re-codified as 907 KAR 11:034]; and
    (b) Specified in an individualized education program for a child determined to be eligible under the provisions of the Individuals with Disabilities Education Act, 20 U.S.C. Chapter 33, and 707 KAR Chapter 1.

It contends that the regulation establishes that a school-based medical service is covered by Medicaid only if it is an "early and periodic screening, diagnosis, and treatment" provided under a student's individualized education program. 907 KAR 11:034 Section 1(3). Kentucky Spirit's reading is too restrictive.

We observe nothing in the regulations Kentucky Spirit cites, or in those to which the parties are bound under the Contract, that indicates the preventative health services in question were excluded from coverage. The Contract specifically and unambiguously states that Kentucky Spirit is required to provide services pursuant to 907 KAR 1:360, which specifically includes a "pediatric service" performed by the Department of Public Health among its "Covered Services." 907 KAR 1:360 Section 3(6). The same regulation does not list the services in question in its "Services Limitations" provision. Furthermore, we see no inconsistency between the services to which 907 KAR 1:715 Section 1(30) and 907 KAR 11:034 refer and those at issue in this case.

Kentucky Spirit also cites to 907 KAR 17:020 Section 2(3)(e), which it quotes as saying "[a]n MCO shall not be responsible for the provision or costs of ... a school-based health service" except those early and periodic screening, diagnostic, and treatment services specified in a child's individualized education program. As is often the case, the devil is in the ellipses.

Regulation 907 KAR 17:020 Section 2(3)(e) states, in its entirety, "An MCO shall not be responsible for the provision or costs of the following: ... (e) Except as established in Section 6 of this administration regulation, a school-based health service[.]" Section 6 of the same regulation states, in pertinent part, "(4) A school-based health service provided by a local health department shall be covered by an MCO." Section 32.8 of the Contract itself, tracking very similar language to that of the regulations, states, "School–Based Services provided by public health departments are included in Contractor coverage." This language is subject to only one reasonable interpretation.

The broader basis for the circuit court's resort to various rules of contractual construction was that prior to 2011, local health departments performed, and were reimbursed under Medicaid for, the services Kentucky Spirit now contends it is not required to cover. This fact is important because the Contract expressly stated: "The Contractor shall cover all services for its Members at the appropriate level, in the appropriate setting and as necessary to meet Members' needs to the extent services are currently provided." At oral argument, Kentucky Spirit argued that the circuit court's emphasis on what it called "prior practice" was misplaced. We disagree. The language above lies perfectly within the four corners of the Contract—Appendix I, to be exact. More importantly, this language is also subject to only one interpretation.

■ Based on the aforementioned provisions within the Contract, we agree with Kentucky Spirit that the document is unambiguous. The four corners of the Contract, in conjunction with relevant regulations, unambiguously required Kentucky Spirit to provide coverage for school-based services performed by local health departments. While our conclusion may indicate that the circuit court unnecessarily resorted to rules of contractual construction, this is of little consequence because the result is the same. "[I]t is well-settled that an appellate court may affirm a lower court for any reason supported by the record." *McCloud v. Commonwealth*, 286 S.W.3d 780, 786 n. 19 (Ky. 2009), citing *Kentucky Farm Bureau Mut. Ins. Co. v. Gray*, 814

S.W.2d 928, 930 (Ky. App. 1991); *see also Emberton v. GMRI, Inc.*, 299 S.W.3d 565, 576 (Ky. 2009). We invoke this provision and affirm the circuit court's order in its entirety.

■ Having held that the services at issue are Kentucky Spirit's responsibility to cover, we must also resolve the question of who may perform those services. Kentucky Spirit contends that it was not obligated to cover services provided by unsupervised health department registered nurses. It cites a provision in the State Plan which states,

> Nursing Services: Services must be medically necessary. The services may be provided in accordance with an Individualized Education Program or an Individual Family Service Plan. Nursing services must be those services that are in a written plan of care based on a physician, physician assistant or nurse practitioner's written order.

Based upon this, Kentucky Spirit argues the circuit court impermissibly expanded the scope of registered nurses' practice under the Contract and Medicaid regulations. We disagree.

The provision in the State Plan to which Kentucky Spirit cites refers to nursing care for specialized services benefitting children with identifiable and serious health conditions. If Kentucky Spirit had quoted the full paragraph regarding "Nursing Services," it would have continued as follows:

> The plan of care must be developed by a licensed registered nurse. Services include but are not limited to: assessments including referrals based on results, bladder catheterizations, suctioning, medication administration and management including observation for adverse reactions, response or lack of response to medication, informing the student about their medications, oxygen

administration via tracheostomy and ventilator care, enteral feedings, emergency interventions, individual health counseling and instructions, and other treatments ordered by the physician and outlined in the plan of care.

By contrast, this case concerns largely routine pediatric services provided by health department nurses, not the specialized services to which the above portion of the State Plan clearly refers. Furthermore, nothing in this or any other regulation we observe states that licensed registered nurses cannot provide the services which are the subject of this case.

In sum, Kentucky Spirit reads the controlling regulations and documents in this case as requiring a doctor's order for every routine service provided within a school—be it an immunization or the dispensing of over-the-counter medicine. We do not read such an extreme limitation to apply to the services in question. Instead, we agree with the circuit court that Kentucky Spirit was responsible for the eligible services of local health department nurses performed in schools.

■ Finally, we address a more tangential argument of Kentucky Spirit's. At oral argument and it its briefs, Kentucky Spirit voiced a concern regarding services being provided to children who are not Medicaid eligible. Kentucky Spirit seeks our reversal of the circuit court's decision based on this concern; however, we do not agree that the Contract, or past practice, permits such violations of federal and state Medicaid guidelines.

As we have stated, the Contract expressly required services to be provided consistent with 907 KAR 1:360 Section 2(a), which expressly requires Departments of Public Health to "comply with the terms and conditions" of state and federal Medicaid statutes and regulations, including those regarding "nonduplication of payments." 907 KAR 1:360 Section

2(a), referencing 907 KAR 1:005. Regulation 907 KAR 11:034 Section 1(5), to which Kentucky Spirit so fervently directs us in support of its argument, defines "Recipient" as "a Medicaid eligible child...." These are but a few examples within both Kentucky's Medicaid regulations and the Contract which act to alleviate, in this Court's mind, any concern surrounding the "free service" issue Kentucky Spirit raises. Sufficient safeguards exist against any such violation of Medicaid guidelines. Furthermore, we strain to grasp how such a concern informs our decision on the services at issue in this case.

### Conclusion

This case involves preventative health services provided to eligible children by health department medical professionals within schools. There is no basis in the Contract, State Plan, or relevant regulations for the coverage limitations, geographic or otherwise, that Kentucky Spirit has alleged in this case. Therefore, the decision of the Franklin Circuit Court is affirmed.

ALL CONCUR.